# LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY
## v.
# ANNIE WARD.

*Railroads — Negligence — Personal Injuries — Crossings — Practice—*
*Trespassers—Pleading—Evidence—Variance.*

1.  A motion in general terms on the part of the defendant that the jury be instructed to find a verdict for the defendant, upon the ground that the proof varies from the declaration. will not save the benefit of the objection.

2.  The public has the right to suppose from the long and uniform practice of taking on and letting off passengers at a place other than a regular station, that its accommodation was the design, and that the railroad company had issued a general standing invitation to use the spot in question and so much ground adjoining as is necessary and convenient for the purposes of a station.

3.  In such case a person may properly wait for a train at any point adjoining the usual stopping place, where it might reasonably be anticipated that any part of the train adapted to the accommodation of passengers would come to a stand.

4.  Railroad companies are not liable to trespassers for anything short of wanton or wilful negligence.

5.  In an action brought to recover from a railroad company, damages for personal injuries alleged to have been caused by its negligence, this court holds, that a certain rule as to movement of trains of defendant was properly received in evidence, and declines to interfere with the verdict for the plaintiff.

[Opinion filed March 10, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. JULIUS S. GRINNELL, Judge, presiding.

Mr. PLINY B. SMITH, for appellant.

There is no station at Root street and plaintiff was a trespasser. Trains stop only on account of the crossing. The fact of people getting on and off north bound trains at this point for their own convenience, does not make it a station. A station is a place where trains stop for the purpose of receiving and discharging passengers or freight or both, and involves certain duties, such as to provide conveniences for passengers, etc.

The fact that there are no conveniences for passengers at this point, that no tickets are sold to or from it, that it does not appear upon the time card, is not advertised or held out as a station, and that no trains stop there coming south, show that it is not regarded as a station, and that the stoppage of north bound trains is not for the accommodation of passengers. C. & A. R. R. Co. v. Flagg, 43 Ill. 364; State v. N. H.

& N. Co., 37 Conn. 153; State v. N. H. & N. Co., 41 Conn. 134; Baldwin v. G. T. Ry. Co., 15 At. Rep. (N. H.) 411.

In Flagg's case, a passenger was ejected from the caboose of a freight train at a water tank a quarter of a mile from a station called Lawndale, and brought suit for being expelled from the train at a point, not the "usual stopping place," under the statute.   The court say, in its opinion (p. 367):

"It is in proof that passengers desiring to enter or leave the train at Lawndale station, often did so at this water tank, as the freight train frequently passed the station itself without stopping, and the tank was only a quarter of a mile distant. It is also in proof that passengers left at the station when the train stopped there.   Whether this tank was the usual place for the discharge of passengers from freight trains, was distinctly left to the jury by the sixth instruction for the defendant, and they found it was not.   Their finding was undoubtedly right.   A local usage adopted by persons living in the neighborhood and familiar with the ground, for their own convenience, can not be considered as making any place but a regular station the proper point for the discharge of passengers."

The plaintiff was also guilty of negligence in taking the more dangerous of two courses open to her.   The place in which she stood between the tracks was nine feet four and three-fourths inches in width, while on the east side of the Rock Island passenger train, the space between the two main tracks in which she might have stood, was thirteen feet three and three-eighths inches in width, giving her a margin of four feet more of safety; a position much safer than the one she occupied.

Again, even in the space where she stood there was sufficient room for her to stand between the two trains in safety. If she had stood in the middle of the space, she would have received no injury.   If a person goes into a network of tracks, where trains may be expected upon any of them, if there is space between the tracks which affords safety, the slightest care requires that that space should be occupied.   It appears from the testimony presented on behalf of the plaint-

iff, that as others stood between the same passing trains in entire safety, she might have done the same.

She chose, however, the dangerous course in two particulars when the safe course was open, and the settled law is, that this prevents a recovery from an injury thus received. City of Centralia v. Krouse, 64 Ill. 19; Lovenguth v. City of Bloomington, 71 Ill. 238; I. C. R. R. Co. v. Godfrey, 71 Ill. 500; I. C. R. R. Co. v. Hetherington, 83 Ill. 510; L. S. & M. S. Ry. Co. v. Hart, 87 Ill. 534; K. P. Co. v. Henry, 50 Ill. 269; I. C. R. R. Co. v. Hall, 72 Ill. 222; C. & N. W. Ry. Co. v. Donahue, 75 Ill. 106; Foster v. C. & A. R. R. Co., 84 Ill. 164; Austin v. C., R. I. & P. Ry. Co., 91 Ill. 35; C. & N. W. Ry. Co. v. Bliss, 6 Ill. App. 411; Abend v. T., H. & I. R. R. Co., 111 Ill. 202.

Again, the place where she went being one of positive danger, commensurate prudence required positive or affirmative acts of care to avoid existing positive dangers. C. & O. R. R. Co. v. Olson, 12 Ill. App. 251.

Mr. E. F. MASTERSON, for appellee.

GARNETT, J.    The judgment of which this appeal complains, was for personal injury to appellee, on April 29, 1886, at appellant's railway crossing of Root (or 42d) street, in this county.    At that time there were crossing at that point what were known as the new-main, the in-main and the out-main tracks, the new-main lying on the east, the in-main, nine feet four and three-fourths inches further west, and the out-main, thirteen feet two and one-half inches still further west. There were two other tracks at the same crossing, both lying west of the out-main, and east of the new-main were three switch tracks, the one lying farthest east, running into appellant's round-house, which was built just south of Root street. The in and out-main tracks were used jointly by appellant and the Chicago, Rock Island & Pacific Railway Company.

In the morning of the day named, appellee was at the Root street crossing, waiting to take passage on the 7:30 A. M. Rock Island suburban passenger train, bound north for the

city of Chicago.    As the train was seen approaching on the in-main track, she, with other persons who were there with the same purpose, moved south of the south line of Root street, to board the train where they could get seats, having found by experience that the seats in the front cars of the train were always filled before reaching that place.    Appellee and several other persons stood between the new and in-main tracks waiting for the train, while others stood between the in and out-main.    Seeing the train coming rapidly from the south, and fearing her clothing might be caught in the draft caused by the rapid motion, she drew back toward the east, and was struck and injured by the tank of appellant's engine which was slowly backing south on the new-main track.

The circumstances of the case, as developed by the evidence, are such that this court has no right to interfere with the verdict, unless some error of law intervened.

The first point made by the appellant is, that the proof varies from the declaration.    Without commenting upon the fact of a variance, it suffices to say that no specific objection on this ground was made in the trial court.    When the evidence was nearly all in, counsel for appellant did move the court to instruct the jury to find a verdict for the defendant on the ground that " the proof varies from the declaration." The benefit of the objection is not saved by a motion so general in its terms.    St. Clair Co. Ben. Soc. v. Fietsam, 97 Ill. 474; Start v. Moran, 27 Ill. App. 119.

Appellant's second point is, that there was no station at Root street and appellee was a trespasser, as she was thirty-five feet south of Root street when she was struck.    No station house, ticket office or platform was built there.    Some of the north bound trains stop at the 39th street station, being the next station north of Root street, but the 7:30 A. M. Rock Island passenger train did not stop at 39th street.    Appellant did not advertise Root street as a station, or name it as such on its time cards, and no tickets were sold to or from there. Tickets were sold to and from 39th street, and were received in payment of fare from passengers taking trains at Root street.    But it is a conceded fact, that for twenty years prior

to April 29, 1886, the north bound trains of both roads had all stopped at Root street, and during all that time all the suburban passenger trains were in the habit of receiving and discharging passengers there. No objection was ever made to the practice by either road, and no warning given to the public generally or to those in the habit of taking the train at Root street, that there was no station at that place. Appellant says that the trains were stopped there on account of the stock yards railroad crossing at 40th street, and not for the accommodation of passengers. The distance of that crossing from Root street is variously stated by the witnesses. One testified that it was about 300 feet, another about 600 feet, and another about 1,000 feet. Taking either estimate as approximately correct, a stop at Root street was certainly unnecessary in obedience to the statute. If the distance was 300 feet, the trains could have stopped south of there, or if it was 600 feet or more, they could have stopped further north. Some other object must have been contemplated, and the public had the right to suppose from the long and uniform course of business, that their accommodation was the design, and if so, they might well assume that the railway companies had issued a general and standing invitation to use the ground at Root street, and so much adjoining thereto as was necessary and convenient, for the purposes of a station. Thompson on Carriers of Passengers, 268.

Failing to indicate by platform, or otherwise, the bounds within which it would be safe for passengers to stand while waiting the arrival of a train, momentarily expected, appellant can not complain if a person intending to take passage stations himself at any point adjoining the usual stopping place, where it might reasonably be anticipated that any part of the train adapted to the accommodation of passengers would come to a stand. Chicago & Alton R. R. Co. v. Flagg, 43 Ill. 364, is cited by appellant to support its contention that there was no station at Root street. We need not find fault with that case.

What was, within the words of the statute as it then read, a " usual stopping place " for ejecting passengers who

refused to pay fare, is not the same question as that now presented to the court. Should the company be permitted to deny the effect of its invitation to the public when it becomes its interest to do so? It is true that the stopping at Root street was for the convenience of the public. So should be every stopping place on a railroad. But it is equally true that the stopping at Root street was for the advantage of appellant. For it to now say that the *only* object was the convenience of the public sounds strangely. The stop there and transportation of passengers to the city for the same fare as if they got on at 39th street, was more than appellant was legally bound to do. But the extension of this slight favor can not be used as an excuse for neglect to provide reasonable precautions for the safety of the passenger at the place where he is invited to enter the train.

We believe the true rules applicable to the facts of this case are stated in Thompson on Carriers of Passengers, page 269: "Wherever a railroad company is in the habit of receiving passengers, whether at a station or some point outside, or if by the regular operation of trains it is necessary to traverse portions of the premises outside of the station house, passengers have a right to assume that such parts of the premises are in a safe condition for such purpose, even on a dark night. * * * Injuries frequently happen to passengers by being run over by other trains passing through stations, while taking or leaving their own trains. In cases of this kind, it would seem that if the running arrangements of the road are such that it is necessary to pass over a railroad track in order to take or leave a train, the passenger may rightfully expect protection against the running of trains at such a time, and may, therefore, properly relax that vigilance for his safety which is ordinarily demanded of one coming upon a railroad track."

The court admitted in evidence, over appellant's objection, this joint rule of the two railroad companies:

"9. When passenger trains are at stations or street crossings, receiving or discharging passengers, other trains or engines must not, under any circumstances, pass between the

430     APPELLATE COURTS OF ILLINOIS.

VOL. 35.]   Lake Shore & Michigan Southern Ry. Co. v. Johnson.

stan ling train and station, or until the track is known to be clear.

"Engineers and train men will look out for local and dummy trains of both roads, that stop at street crossings, between Englewood and Chicago.

"For the government and information of employes only."

It is said that the rule should not have been admitted, as it was not set up in the declaration.   A similar point was decided adversely to appellant in Coates v. The Burlington, C. R. & N. Ry. Co., 62 Iowa, 486; see, also, Chicago City Ry. Co. v. Wilcox, 33 Ill. App. 450.   The evidence is competent as an admission of the defendant.

Plaintiff's third instruction was predicated upon the hypothesis that she was a trespasser and by it the jury were instructed that the defendant was liable if its servants could, by reasonable care, have avoided injury to plaintiff.   Railroads are not liable to trespassers for anything short of wanton or wilful negligence, but as there was no evidence tending to prove plaintiff a trespasser, the error in the instruction was harmless.

The main points of the contention have now been disposed of, and without commenting separately upon each of the remaining objections to the judgment, presented by the appellant's brief, we will simply say that due attention has been given to them all, and we are satisfied there has been no error warranting a reversal.

The judgment is affirmed.

*Judgment affirmed.*