CHICAGO WEST DIVISION RAILWAY COMPANY

*v.*

PHŒBE R. MILLS.

*Filed at Ottawa November 20, 1882.*

1. PLEADING AND EVIDENCE—*only material allegations need be proved.* If the whole of an averment in the declaration may be stricken out without destroying the plaintiff's right of action, it is not necessary to prove such averment.

2. SAME—*as to surplusage.* A party is not bound to prove matters alleged which are merely surplusage. If the proof does not correspond with such matters, the variance is immaterial.

3. In an action to recover for personal injuries, where the plaintiff was injured while alighting from a street car, by the negligent starting of the car while the plaintiff was in the act of getting off, it is of no consequence whether the car was stopped at the instance of the plaintiff or not, or whether the plaintiff asked or obtained permission to alight; and such matters, if alleged in the declaration, are surplusage, and need not be proved, the *gist* of the action being negligence in starting the car while the plaintiff was in the act of alighting.

4. NEGLIGENCE—*starting street car as passenger is getting off.* If a street car is stopped for any cause at a place where passengers are in the habit of getting off, a passenger will have the right to alight without making any request or obtaining any permission; and if the driver of the car knew, or by the exercise of due care would have known it, it will be negligence to start the car before a passenger in the act of leaving the car has had a reasonable time in which to alight.

5. Although the driver of a street car may have reason to believe that a passenger does not intend to get off at a certain place of stopping, or even if he is expressly so notified by the passenger, it is still the duty of the driver to wait at such place until persons in the act of getting off have had a reasonable time to do so, before starting; and if he knows that such passenger is in the act of getting off, or might have known such fact by proper care and diligence, and does not give proper time, but starts, whereby the passenger is injured, he will be guilty of such negligence as to render the company whose servant he is, liable.

6. PRACTICE—*directing the jury as to the character of their finding.* Where there is evidence tending to prove a cause of action, it is an invasion of the province of the jury to instruct them that the plaintiff can not recover.

7. INSTRUCTION—*as having evidence for its support.* If there is any evidence tending to establish the facts submitted in an instruction, it can not

be said to have no evidence on which to rest. It is not necessary that the facts submitted should appear by a preponderance of the evidence. Such an instruction is proper, though the preponderance of the evidence is the other way.

8. SAME—*construed with reference to the evidence.* An instruction must be construed with reference to the facts in evidence before the jury. So where an instruction stated the facts upon which the jury might find for the plaintiff, unless they should find, from the evidence, that a release was executed by the plaintiff under an agreement which he, at the time of making the same, was capable of understanding and intelligently consenting to, and the evidence showed the plaintiff was, at the time of executing the alleged release, temporarily under the influence of opiates, it was *held,* that the instruction must have been understood as referring to a want of intelligence caused by the influence of the opiates, and not as a simple lack of intelligence, especially when any pernicious effect of the instruction was fully counteracted by one of the instructions on the other side.

9. APPEALS—*reviewing controverted questions of fact.* In an action to recover damages based upon negligence, where the judgment below has been affirmed by the Appellate Court, this court is precluded from examining any controverted questions of fact.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

On the 4th of May, 1876, appellee sued appellant, in the Cook circuit court, in an action on the case, for negligence. The general issue, and also special pleas of accord and satisfaction, and a special plea of release, were pleaded. The *similiter* was added to the general issue. To the plea of accord and satisfaction it was replied, that plaintiff, at the time she received said payment, etc., was unconscious, and wholly incapable of understanding the meaning and effect of what she did, etc., and to the special plea of release, *non est factum* was replied. Subsequently, the parties stipulated, in writing, that the plaintiff, under her replication of *non est factum,* might show any fact or facts, or any defence which it would be competent for her to prove under any special replication well pleaded to the pleas of release, and that the defendant might meet such facts or defence in

the same manner and with like effect as they could do under any rejoinder legally interposed. At the May term, 1877, of that court, trial was had, resulting in a judgment for the plaintiff. The defendant appealed to this court, and the judgment of the circuit court was, at our September term, 1878, reversed, and the cause remanded for a trial *de novo.* The case is reported as *Chicago West Division Ry. Co.* v. *Mills,* 91 Ill. 39, to which reference is made for a full statement of the facts. After the remanding of the cause, and at the January term, 1882, of the Cook circuit court, another trial was had, resulting, as the first, in a judgment in favor of the plaintiff. From that judgment appeal was prosecuted to the Appellate Court for the First District, and that court, at its March term, 1882, affirmed the judgment of the circuit court. This appeal is from that judgment. The errors assigned raise the questions discussed in the opinion.

Mr. FRANCIS H. KALES, for the appellant: .

The plaintiff having failed to give any evidence tending to prove certain material allegations in her declaration, could not recover. The court, therefore, erred in not instructing the jury "that upon the evidence in this case the plaintiff can not recover."

The court erred in giving the plaintiff's first instruction, for the reason the evidence did not show the facts upon which it was predicated. The conduct of the plaintiff plainly indicated to the driver that she intended, after coming down on the cars and not alighting at the end of the route, to make the return trip on the same car. She gave no signal of any change of purpose, or of a desire to alight, so that the driver, on starting, had no notice she was getting off. The driver was not bound to stop, or wait, unless he knew, or might have known by due care, that a passenger wished to get off the car. *Chicago and Northwestern Ry. Co.* v. *Dimmick,* 96 Ill. 42; *Chicago, Burlington and Quincy R. R. Co.* v. *Johnson,* 103

5—105 ILL.

id. 512; *Illinois Central R. R. Co.* v. *Green*, 81 id. 19; *Railroad Co.* v. *Delaney*, 82 id. 98; *Schmidt* v. *Railroad Co.* 83 id. 405.

That part of plaintiff's first instruction, to the effect that the plaintiff's release, to be valid, must have been "executed by the plaintiff under an agreement which she was, at the time of making it, capable of understanding and intelligently consenting to," is erroneous. The disability pointed out as a guide to the jury was not that of a temporary impairment, however caused, of her mental faculties, but was made to depend upon the *quantum* of capacity and general intelligence which she possessed.

Mr. S. K. Dow, for the appellee:

The evidence sustained the material allegations of the declaration. The *gravamen* of the action is not negligence in not stopping the car on request, but that the defendant having stopped the car for passengers to alight therefrom, among whom was the plaintiff, it suddenly and violently started its car, without having waited a reasonable time for appellee to alight. Hence the court properly refused to instruct the jury to find for the defendant on the evidence.

As to the negligence of the parties, the trial court found, from the evidence, the material and principal fact that the plaintiff was injured through the negligence of the defendant, and the Appellate Court having confirmed this finding, the decision of the Appellate Court as to the facts is final and conclusive. *Wrought Iron Bridge Co.* v. *Commissioners of Highways*, 101 Ill. 518.

The allusion in the instruction to the plaintiff's state of mind at the time of executing the release, could not be understood as an ordinary want of intelligence, and was no doubt understood in reference to her state of mind at the particular time, arising from the use of opiates, etc. As to mental capacity to contract, see *Yore* v. *McCord*, 74 Ill. 33; 1 Redfield on Wills, 123, 124.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The several alleged errors in the rulings below will be passed upon in the order of their discussion in the argument on behalf of appellant.

*First*—The point is made that it is alleged in the declaration that it became the duty of the defendant, upon the plaintiff's request, to slacken speed, so as to enable her, in the exercise of due care, to alight from the car without injury; that it neglected to do so, but on the contrary, on the request of the plaintiff, the defendant caused its car to be stopped, and the plaintiff, with the defendant's consent and permission, attempted to alight from the car, and while so attempting the defendant carelessly, etc., caused the car to be suddenly and violently started, etc., whereby, etc.,—whereas there is no evidence in the record tending to prove that the plaintiff requested the defendant to stop for her to alight, or that it did so, or that she obtained the defendant's consent or permission to alight when she attempted to do so, or that the defendant or its servants knew she was attempting to alight when she undertook to do so, and that therefore the circuit · court should have given, as asked, the defendant's fourth instruction, namely, that "upon the evidence in this case the plaintiff can not recover."

A party is not bound to prove matters which are merely surplusage. If the proof does not correspond with such matters, the variance is immaterial. (*Pennsylvania Co.* v. *Conlan,* 101 Ill. 93.) If the whole of an averment may be stricken out without destroying the plaintiff's right of action, it is not necessary to prove it. (*Williamson* v. *Allinson,* 2 East, 446; *Maxwell* v. *Maxwell,* 31 Maine, 184.) The *gist* of the present action is the negligence of the defendant in starting the car while the plaintiff was in the act of alighting. It was of no consequence whether the car was stopped at the instance of the plaintiff or not, since the act of stopping was

productive of no injury, and is in no respect complained of. It is sufficient while the car was stopped parties were getting off, and the plaintiff, while attempting also to do so, with due care, was injured by reason of the negligent starting of the car by the defendant's servant. Nor could it be material to determine whether plaintiff asked or obtained permission of the defendant or its servants to alight. The car being stopped, from whatever cause, at a place where passengers were in the habit of alighting, she had the undoubted right to alight without making any request or obtaining any permission in that regard, and if the defendant's servants knew, or by the exercise of due care would have known of it, it was negligence on their part to start the car before she had a reasonable time in which to alight. So it would seem clear, if the allegation that counsel insists there is no evidence tending to prove, were stricken from the declaration, it would still be substantially good. Where there is evidence tending to prove a cause of action, it is an invasion of the province of the jury to instruct them that the plaintiff can not recover. *Guerdon* v. *Corbett et al.* 87 Ill. 272; *Hubner* v. *Feige,* 90 id. 208; *Peoria Ins. Co.* v. *Frost,* 37 id. 333.

There was some evidence tending to prove that the plaintiff was injured while attempting to alight with due care, by reason of the negligence of the defendant's servant in starting the car. It follows, in our opinion, there was no error in refusing to give the instruction.

*Second*—The first instruction, given at the instance of the plaintiff, is as follows:

"The court instructs the jury, as matter of law applicable to this case, that it was the duty of the defendant, as a common carrier of persons at Chicago for hire, when it stopped its cars, whether in consequence of a signal from some passenger on the car or not, not to start the same again while its passengers are in the act of getting off the car, if the fact that its passengers are in the act of alighting is known to the

person having charge of the same, or would be known to such person by the exercise of due care and caution in the discharge of his duties, and as a common carrier of passengers defendant should give its passengers a reasonable opportunity to alight from its cars before starting the same, when the fact that its passengers desire to alight is known, or by the exercise of due care and diligence would be known to the person in charge of the car; and if the jury believe, from the evidence and the circumstances proven in this case, that on the 13th day of May, A. D. 1875, the plaintiff was a passenger upon one of the street cars of the defendant operated by it on Madison and State streets, within the city of Chicago, and that while such car of defendant in which plaintiff and others were being conveyed as passengers, was driven along State street, north of Randolph street, it was stopped for the purpose of allowing its passengers, among which was the plaintiff, to get off, or had stopped for any other purpose, with or without a signal to stop, and when so stopped the passengers were in the act of getting off said car, with the knowledge of the driver of said car; and if you further find, from the evidence, that the plaintiff, at this time and place, the said car being stopped and not in motion, (if you find, from the evidence, that such was the fact,) in the exercise of due care and diligence on her part, was also in the act of alighting from said car, and that the defendant, by its driver, started the said car while plaintiff was so getting off, and before she had a reasonable time to do so, and thereby threw the plaintiff down upon the street, and by reason thereof the neck of her thigh-bone was broken or injured, without negligence or fault on her part, and by reason of negligence or carelessness on the part of the driver of the car, (if you find, from the evidence, he was guilty of carelessness or negligence in starting the car,) then the defendant would be liable for the damages thereby sustained by plaintiff, and the verdict should be for the plaintiff, unless the jury further find, from

the evidence, that the release read in evidence was executed by plaintiff under an agreement which she was, at the time of making it, capable of understanding and intelligently consenting to, or that, after being fully informed thereof, she ratified it or failed to return the consideration paid to her, (if the jury believe, from the evidence, any was paid to her,) and thereby avoid said release."

Three objections are taken by counsel to this instruction:

1. It is insisted the evidence does not show that the defendant was in any manner negligent, and that therefore there was nothing in the evidence upon which to rest the instruction. It may be that if the question of the preponderance of the evidence upon the question of negligence were submitted to us as an original question, we would be of opinion that the decided preponderance is with the defendant. Still, that could not be of the slightest moment in respect of the duty now incumbent upon us. The question is, simply, did the evidence tend to establish the point submitted? If it did, then it was properly left to the jury. We have already said that, in our opinion, there was evidence tending to establish negligence in the servants of the defendant, and that was sufficient. The question was, then, proper to be submitted to the jury.

2. It is again insisted that the plaintiff, by her conduct, plainly told the driver of the car that she intended, after coming down on the car and not alighting at the end of the route, to make the return trip on the same car, and that hence so much of the instruction as declared the duty of the defendant to be not to start the cars while its passengers are in the act of getting off, was erroneous, because inapplicable. It can not with accuracy be said all the evidence shows, and none tends to the contrary, as here insisted by counsel for the defendant. Mrs. Camp testified, among other things: "People were getting off the cars, and we (*i. e.*, plaintiff and

witness,) finally concluded we also would get off. I got off. I noticed she arose and followed immediately." Again she said: "One reason why we thought we would get off, was because others were getting off. Others arose a little before, and we arose as others. * * * They were in the act of rising and getting out as we did. My recollection is there were several that seemed to be rising and leaving the car. The car was standing still, and others were getting off." Plaintiff, among other things, testified: "Mrs. Camp got off. Others got off, and I attempted to get off. The car started while one of my feet was on the side platform of the summer car and the other foot was stepping down, and threw me down. The car must have been started suddenly. I felt a jerk, and seemed to feel a whirl, and fell. * * * When we were getting off, the car was standing still. Had not been standing still many minutes. People were getting off. We commenced to get off as soon as it stopped. There were other ladies. They got off the same side as we did. I saw Mrs. Camp get off. The car stopped to let passengers off, as I took it. I do not think I rang the bell—could not tell who did ring the bell. It is my impression that it was rung. Am certain this car was standing still. Did not attempt to get off while the car was moving. It was an open summer car, and he (the driver) could have seen me. There was no obstruction to prevent him knowing whether the passengers were getting off." The driver of the car testified, on cross-examination: "The accident occurred on State street, between fifty and one hundred feet from Randolph street. The car was an open summer car. The fact that I saw the lady fall from the side of the car refreshes my recollection. * * * There were no obstructions to prevent my seeing this lady as she was stepping down from the car. I could see her distinctly, and she could see me. * * * There are lots of passengers that ride either way on this part of State street, north of Randolph. There was no provision against it. * * *

Anybody could get on or off between Randolph and Lake streets, if they chose. There was no provision against it." If the driver of the car knew that passengers were getting off, as it would seem from this evidence he did, it was his duty not to start the car until they had sufficient time to get off. So, also, where a driver stops a car at a place where passengers are in the habit of getting off, he must not start it again until he knows he can do so in safety to his passengers. There is nothing in the evidence from which it is pretended the driver was authorized to infer plaintiff did not intend to get off, except the fact she rode to the end of the track, and did not get off. But it can not be said that any legal inference results from this. People may get off when and where they please, provided the car is stopped when they attempt to do so. But even if the driver had been expressly notified by plaintiff that she did not intend to get off, when he saw passengers getting off it was still his duty to wait until they had reasonable time to leave the car, before starting.

3. It is insisted that the instruction in respect of the release submits an improper test,—that although she may not have been under any mental impairment, still, under this instruction, if she did not have sufficient intelligence she would not be bound by it. This instruction must be construed with reference to the facts in evidence before the jury, and being so construed, it must have been understood that the want of intelligence was caused by her being temporarily under the influence of opiates, etc.; and any pernicious effect that this instruction might possibly have otherwise had, was fully counteracted by the defendant's third instruction, supplementing and explaining all that is here omitted.

We think, on the whole, the instruction is free of legal objection.

*Third*—We are precluded, in cases like the present, from going into any controverted question of fact. The language of the amended Practice act of June 2, 1877, is explicit, that

"no assignment of error shall be allowed which shall call in question the determination of the inferior appellate court upon controverted questions of fact." Comment can not make this more plain.

The judgment is affirmed.

*Judgment affirmed.*