## West Chicago Street Railroad Company v. John Luka.

1. STREET RAILROADS—*Duty to Passengers Attempting to Alight.*— When a street car is stopped passengers have a right to assume that they may get off the car in safety, and a street railroad company should take note of the movements of passengers endeavoring to get off, and should exercise the greatest care consistent with the practical operation of its cars, to so control their movements, that after being stopped they are not started up without warning to passengers trying to get off, and such

passengers thereby injured.   And this is the rule whether  the stop is at an established place for discharging passengers or not.

2.   Same—*Care Required of, for Safety of Passengers.*—A street railroad company is not an insurer of the safety of its passengers, but is only bound as a common carrier to exercise the highest degree  of  care, skill and  diligence for the safety of  its  passengers  that is practicable and consistent with efficient use and operation of its cars.

3.   Negligence—*A Question of Fact for the Jury.*—An instruction telling a jury that  certain  acts amount to negligence is  erroneous,  as negligence is a question of fact for the jury.

4.   Evidence—*Things Happening After an Accident, not Evidence of Negligence.*—It is  improper to  instruct a jury in a personal  injury case that they may consider evidence of what  happened  after  an  accident on the question of the plaintiff's care and the defendant's negligence.

5.   Trials—*Attempt to Bribe the Jury as Ground  for a New Trial.*— A corrupt attempt to influence the verdict of a jury by other means than evidence and argument in open court, is always ground for a new  trial on grounds of public policy, without reference to the merits of the  case, or the success of the attempt, and the rule should be applied with almost equal stringency  even when  the attempts are from officious  third persons.

**Trespass on the Case,** for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. Edward F. Dunne, Judge, presiding. Heard in this court at the March term, 1897.  Reversed  and  remanded. Opinion filed October 21, 1897.

Alexander Sullivan, attorney  for  appellant;  E.  J. McArdle, of counsel.

Cowen & Houseman, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the Court.

Appellee was injured in July, 1894, in alighting from one of  appellant's  horse  cars on Ashland  avenue near 14th street, Chicago, and brought suit  for  damages against appellant, claiming that he was  injured by the negligence of appellant's servants, causing a rupture and other injuries to appellee.

A trial was had, which resulted in  a verdict for appellee of $6,000, on which the Circuit  Court entered judgment, from which this appeal is prosecuted.

Numerous errors are assigned, but inasmuch as we have,

after full consideration of the evidence in the record, which is conflicting, reached the conclusion that it tends to sustain the allegations of the declaration, and that appellee's case should be submitted to another jury (Chicago West Division Ry. Co. v. Mills, 105 Ill. 68, and cases cited), we refrain from any discussion of the evidence, and only pass on such errors assigned as are below noted, and the refusal of the court to instruct a verdict for appellant.

Appellant claims that the trial court erred in giving the jury appellee's 2d, 3d, 7th and 9th instructions, which are as follows:

" 2. The court instructs the jury as a matter of law that it is the duty of a common carrier, like a street railway, to carry its passengers safely, and to afford them reasonable opportunity to alight after coming to a full stop.

3. The court instructs the jury, as a matter of law, that if they find from the evidence that the plaintiff in this action was a passenger on one of the cars of defendant, and had with him rightfully on said car his wife and several of his small children, and that the car had come to a stop for the purpose of enabling passengers to alight, and plaintiff had alighted, then it was the duty of the agents and servants of defendant in charge of said car, to afford plaintiff a reasonable opportunity of taking his small children from the car, and if the jury finds that the car was started without affording such opportunity, and the accident resulted therefrom, such starting of the car was an act of negligence on the part of the defendant.

7. The court instructs the jury as a matter of law that if they find from the evidence that the plaintiff in this action was a passenger on one of the cars of defendant, and had with him rightfully, on said car, his wife and several of his small children, then after the car had come to a stop and the plaintiff had alighted, it was the duty of the agents and servants of defendant in charge of said car, to afford plaintiff a reasonable opportunity of taking his small children from the car, and if the jury find that the car was started without affording such opportunity, such starting

of the said car was an act of negligence on the part of the defendant.

9.   The court instructs the jury that if they find from a consideration of the evidence concerning *all that happened at, before and after the time of the accident*, that the plaintiff was exercising reasonable and ordinary care, and that the defendant, by its agents, was guilty of negligence as charged in plaintiff's declaration, and that plaintiff was injured thereby, then the jury should find the issues for the plaintiff."

Appellant urges that the declaration charges a stopping of the car near 15th street, at a point where it ought to stop to receive and let off passengers.   The evidence, appellant insists, is, that if a stop were really made, it was in the middle of the block near a switch, "and immediately the car started again."

Appellant says it was not a stop to receive or let off passengers, but to let the car off the switch, "and at the time the start and stop were made, the conductor was up with the driver, and the plaintiff knew that, for he says so."

It may be true, as appellant insists, that the place where the car stopped, was not one at which the defendant was bound to stop its car, it being bound to stop its car only upon request of passengers at street intersections or established places for stopping.   Nevertheless, it is the common practice in this city, especially with regard to open summer cars, such as this was, for the appellant to permit passengers to get on and off its cars at other places than street intersections; so that when a car is stopped, whether at a street intersection, or in the middle of a block, passengers have a right to assume that they may then get off the car in safety; and the appellant should exercise the greatest care consistent with the practical operation of its cars, whenever its cars stop, to take note of the movements of passengers endeavoring to get off the car, and to so control the movements of its cars that they are not, even when stopped in the middle of a block, started up, without warning to passengers trying to get off, in such manner that

they are injured.   As a common carrier it is bound to exer-
cise the highest degree of diligence for the safety of its pas-
sengers, with the modification above stated; and it can not
say, because it stopped its car in the middle of a block, that
it was not bound to exercise that care in seeing to the efforts
of passengers to get off at such place. ·

The appellant having stopped its car, the appellee was
not thereafter bound to notify the appellant that he wished
to get off and take his children off the car; but the appel-
lant was bound to exercise the greatest care, modified as
above stated, to take notice of what, in that regard, the
appellee was doing.   Chicago W. D. Ry. Co. v.  Mills, 105
Ill., 63–68–72.

When an ordinary steam railway running and stopping for
the reception and discharge of passengers only at regular
stations, stops at a place not designated for the reception or
discharge of passengers, it is perhaps not the duty of the
carrier to keep watch of the movements of passengers who
may see fit to get off at such place; but with respect to
street cars in a city, the rule, because of the practice of the
people and the permission of the carriers, is different.

We therefore think that the objections urged by appel-
lant to the 2d, 3d and 7th instructions as to the element
of stopping or the place of stopping the car, are not well
taken, except that by the 7th instruction the court assumes
that the car had come to a stop, instead of submitting that
point to the jury to find from the evidence.   This was
error, because it was a disputed point in the case.   But the
2d instruction is erroneous in that it makes appellant an
insurer of the safety of its passengers, whereas its duty as
a common carrier is that it should exercise the highest
degree of care, skill and diligence for the safety of its passen-
gers that is practicable and consistent with the efficient use
and operation of its cars.   Chicago & A. R. R. Co. v. Arnol,
144 Ill. 271, and cases cited; West C. St. R. R. Co. v.
Martin, 47 Ill. App. 615; North C. St. R. R. Co. v. Wrixon,
51 Ill. App. 312.

The 3d and 7th instructions are erroneous, however, in
that they tell the jury that certain acts are negligence.

Chicago & E. I. R. R. Co. v. O'Connor, 119 Ill. 597; Chicago & I. R. R. Co. v. Lane, 130 Ill. 122, and cases.

The 9th instruction is erroneous, in that it tells the jury in effect that they may consider evidence of what happened after the accident on the question of appellee's care and appellant's negligence. While such an instruction would be proper in reference to damages, it opens too broad a field on the questions of care and negligence.

This instruction was, however, probably harmless, as there seems to have been no evidence offered as to what occurred after the accident bearing on the questions of care and negligence.

The trial in the court below was begun on Friday, January 29th, was continued and resumed on Tuesday, Wednesday, Thursday and Friday of the following week, the jury bringing in its verdict on Saturday morning.

During the adjournment from Friday until Tuesday and on Sunday, some person, unknown to have any connection directly or indirectly with the parties to the suit, or any of the counsel in the case, who gave his name as Murphy, approached one of the jurors, James P. Landers, and after a drink with Landers, said to him, "You are on the jury down town; there is a friend of mine that is paying for his house and lot, and if this case is decided against the railroad company, he will lose his job, and he will lose his house and lot. You would not like to see a laboring man or a poor man lose his house and lot, and if you bring in a verdict for the company, there is $50 in it for you. I will leave it here with Prendergast and you can get it the minute the case is over."

The money was not left with Prendergast, and Landers communicated the conversation to the court on Monday following. The court instructed Landers to say nothing about it to any one, but put the juror in communication with a detective, and told Landers to try and find out all he could about it; to see Prendergast and try to get him, Prendergast, to get Murphy to give him, Landers, the money, mark the money and give it to the court.

Landers obeyed the instructions of the court as to finding out, but got no further information in the matter.    He also communicated what Murphy had said to him to another juror, and possibly to two jurors, during the course of the trial.

After the jury had rendered its verdict, the court announced publicly in the court room that two of the jurors had been corruptly approached.    It also appears that another juror, Flynn, evidently one of those referred to by the court, was also approached and offered a bribe by some unknown person to bring in a verdict for defendant, and this was also communicated to the court on Monday while the trial was in progress.

When the attempted bribery was publicly announced by the court after the verdict, was the first knowledge or intimation by any one to either of the parties or counsel in the case of that fact.    We think this was a mistaken course on the part of the trial judge.    He, no doubt, was conscientious, believing it to be in the interest of justice to keep the attempted bribery secret, possibly thinking he might thereby the better discover the bribe offerer, but we are clear that this was error.

If Landers and Flynn were honest, well-meaning men (and there is nothing in this record to show but that they were), it is but human that their minds would, to some degree, be prejudiced against appellant by what, to them at least, appeared to be an effort to influence their verdict corruptly, either by appellant or in its interest, and while not directly from appellant, it was the same in its practical result.    They, no doubt, believed it was inspired by appellant or some of its agents.    That being their state of mind, quite naturally the feeling would be stimulated and strengthened by their secret understanding with the court and communication with the detective in efforts to find out the guilty person through a period of four days, while the trial was in progress.

It goes without saying, that if these jurors, on their *voire dire*, had answered that they had theretofore been ap-

West Chicago Street R. R. Co. v. Luka.

proached by an unknown person and offered money to give a verdict for appellant in case they were taken on the jury, that the trial court would not have accepted them against the objection of either party to the suit.

Counsel have given us no assistance on this question by the citation of any authority, and we have not felt it was necessary to support our views by extended reference to precedents, but are satisfied with the reason and correctness of the statement in 2 Thompson on Trials, Sec. 2560, to the effect that a corrupt attempt to influence the verdict of a jury by other means than evidence and arguments in open court, on grounds of a public policy, is always ground for a new trial, without reference to the merits of the case, and whether successful or not, and that the rule will be applied with almost equal stringency even when the attempts are from officious third persons. See also Heffron v. Gallupe, 55 Me. 565, and Nesmith v. Clinton Fire Ins. Co., 8 Abb. Pr. Rep. 141.

In the latter case, where the verdict was for the plaintiff, and the tampering with the jury was not by the plaintiff, nor was it shown that he knew of it or promoted it in any manner, a new trial was awarded, and the court says, before a new trial will be denied, it should clearly appear that no injustice has been done, and that the conversations with the juror did not influence the verdict.

The case at bar is a close one, both on the questions of care of the appellee and the negligence of appellant, and no one can say but the verdict was affected by the efforts to bribe the two jurors. The conduct of the jurors in communicating with the court is highly commendable, but the trial should certainly not have continued after that without a knowledge by the parties of the fact and their consent, except, perhaps, with a view of discovering the guilty persons during the progress of the trial, and eventually of awarding a new trial.

For the errors noted, the judgment will be reversed and the cause remanded.