### Chicago City Railway Company v. Elias Lowitz.
#### Gen. No. 11,586.

1. Objection—*when waived.* An objection to the competency of evidence is waived where the counsel for the complaining party has stated with respect to the offer of such evidence, "I will let counsel prove that fact if he can. I will make no objection to that, to show the sincerity of the offer."

2. Custom—*when competent.* It is competent in connection with a charge of negligence to establish a custom of the defendant traction company to stop its cars at a particular crossing at the

near side of the street rather than at the far side, which is the general rule.

3. RULES—*when competent upon charge of negligence.*   The rules of the defendant traction company with respect to the duties of motormen and conductors when about to cross steam railroad crossings and the bringing of cars to a full stop, held, competent upon the question of a custom of stopping at the near side of the street and in connection with the other charges of negligence in the case.

4. RE-DIRECT EXAMINATION—*what proper upon.*   Where upon cross-examination parts of a conversation are elicited, upon re-direct it is proper to permit the entire conversation to be brought out.

5. EXPERT TESTIMONY—*what competent by way of.*   It is competent for an expert medical witness to testify as a matter of opinion that there was "apparent inability to use" a hip.

6. PAIN—*when complaints of, proper.*   Complaints of pain made by the party injured may be testified to by a witness who heard them, where such complaints were made within an hour of the accident.

7. INSTRUCTION—*must not single out particular evidence.*   An instruction is improper which singles out particular evidence in the case and which forms a link in the chain of evidence and which does not in itself constitute negligence upon which a recovery can be predicated.

8. PASSENGER—*when may alight from car.*   A passenger is within his legal rights in attempting to alight from a car which has come to a full stop at a point where the cars of the defendant company were accustomed to stop.

9. VERDICT—*when not excessive.*   A verdict for $4,750 is not excessive where the evidence shows that the plaintiff, though well advanced in years, was in general good health and possessed of good vigor and activity and received as a result of the accident a broken bone which has never united, and never will, and which has, in all probability, deprived him of all capacity to work and earn money.

Action on the case for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1903.   Affirmed.   Opinion filed March 21, 1905.

**Statement by the Court.**   Appellant was engaged in operating an electric line of street railway upon and along Indiana avenue in the city of Chicago.   Indiana avenue runs

north and south and 40th street runs east and west, crossing Indiana avenue at right angles. Running along 40th street are steam railroad tracks which cross Indiana avenue at grade; and immediately south of 40th street the South Side Elevated Railroad runs east and west, across Indiana avenue. On the southeast corner of 40th street and Indiana avenue there is constructed an entrance and stairway to the elevated structure.

Appellee claims that on the evening of October 11, 1899, in company with his two sons and one D. C. Thixton, he visited at the house of a friend on Princeton avenue, between 47th and 48th streets, and between ten and ten thirty o'clock they started to return to their homes. They walked to 47th street and took a car going east on the 47th street line. Upon arriving at Indiana avenue they transferred to a north-bound car on Indiana avenue. When they reached 40th street the car stopped, as is the custom, before crossing the railroad tracks on 40th street, for the purpose of enabling the conductor of the car to go forward and ascertain if it was safe for the street car to pass over the tracks. As soon as the car stopped the conductor went ahead to see if there was any danger, and seeing that the way was clear, signaled the motorman to start ahead. The motorman in charge of the car started the car forward and took it across the railroad tracks.

Appellee claims that when he entered the Indiana avenue car the conductor was informed that they wished to step on the south side of 40th street. When the car stopped, appellee and his son William left their seats in the car and went out upon the rear platform of the car. The son stepped off the car safely. Appellee, following closely behind him, had one foot on the step and the other upon the ground, in the act of alighting from the car, and the car started and he was thrown to the ground, receiving the injuries complained of.

WILLIAM J. HYNES, WATSON J. FERRY and EDWARD C. HIGGINS, for appellant; MASON B. STARRING, of counsel.

Chicago City Railway Co. v. Lowitz.

WING & WING, for appellee; FRANKLIN B. HUSSEY, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

It is urged by appellant that improper evidence, prejudicial to appellant, was admitted during the trial at various times. Appellee was permitted to introduce evidence to show that it was customary, or a common practice, for people to get off cars of appellant on the south side of 40th street, when such cars came to a stop for the purpose of "making the crossing," for the purpose, among others, to take the elevated trains at that point. Evidence of this character was elicited on cross-examination of Coley, who at the time of the accident was a conductor in the employ of appellant; and also from Latcham and McFarland, called by appellee, in rebuttal. Several witnesses had been called by appellant on this point. At the close of appellant's case, and while appellee was putting in his rebuttal, counsel for appellee offered to prove that at and prior to the time of the accident, it was the custom and a usual thing for passengers to alight on the south side of the tracks and take the elevated and boulevard trains. Thereupon counsel for appellant said: "I will let counsel prove that fact if he can. I will make no objection to that, to show the sincerity of the offer." It would seem that, whether this line of testimony introduced by appellee was proper rebuttal or not, the objection to it was waived by appellant.

We do not think the case of South Chicago City Ry. Co. v. Dufresne, 200 Ill., 456, cited by appellant on this objection is in point. The question there decided was that it was not competent to prove a custom and practice of people to get upon cars while they were in motion, at a certain crossing of railway tracks. The question decided in that case was very different from the one now before us.

The reasonable practice of stopping the north-bound cars at the south side of 40th street before attempting to cross the steam railroad tracks, for the purpose of ascertaining whether there was any danger in crossing, would have a

tendency to induce the practice or custom for passengers to get on and alight from the cars at that point. If that was a fact, then under the rule laid down in North Chicago Ry. Co. v. Kaspers, 186 Ill., 246, it became appellant's duty to run its cars "in reference to the practice which it recognized and aided." We find no reversible error in admitting the evidence.

Appellant insists that it was error to admit in evidence a part of section 26 of the rules of appellant regarding the duties of motormen and conductors when about to cross steam railroad crossings and the bringing of cars to a full stop between 15 and 25 feet from steam railroad crossings, and that the gripman, motorman or driver is responsible for the management of the train or car during the absence of the conductor. We think the rule was admissible to show a practice and custom of stopping the cars at the point of injury, and as tending with the other evidence in the case to show negligence in the management of the car. L. S. & M. S. Ry. Co. v. Ward, 135 Ill., 511. It was not competent for the purpose of founding a substantive cause of action upon its breach, but as throwing light upon the question of the degree of care that was exercised by appellant in starting its car while appellee was in the act of alighting from the car. Such a practice and custom, known and relied upon by appellant and its employees and by the public, would necessarily enter into and become a part of the *res gestae* of the injury complained of. It was held in St. Louis National Stock Yards v. Godfrey, 198 Ill., 288, where evidence was admitted by the trial court as to the usual manner of conducting the business of appellant and others in appellant's yards, that "the environment and usual manner of conducting the business involved at the place of injury is competent as shedding light on the acts and conduct of the parties." The cases of North Chicago Street R. R. Co. v. Irwin, 202 Ill., 345, and L. S. & M. S. Ry. Co. v. Brown, 123 Ill. 162, hold to the same general effect that the existence of a custom enters into the consideration of the question of negligence, and that evidence of the custom is proper. That part of

the rule which provides that "in the absence of the conductor, the gripman, motorman or driver is responsible for the management of the train or car" and that "before starting, know positively that no person is attempting to get on or off, and indicate to the conductor the passengers who enter the train or car while the conductor is examining the railroad crossing," tends to show an admission on the part of appellant that the exercise of due care for the safety of its passengers required the motorman, in the absence of the conductor from the car, for the purpose indicated in the rule, to be responsible for the management of the car, and to know positively before starting that no person was attempting to get on or off the car. In this view, as stated in the Ward case, *supra,* the rule was clearly admissible.

We do not think it was material to cross-examine the witnesses Aye and Woick as to their familiarity with the above rule, but it was harmless error. These witnesses had testified to a conclusion rather than a fact as to whether there was a stopping place for letting off passengers near the elevated station on the south side of the railroad tracks. The cars always stopped there and passengers had a right to alight there. The fact that the witnesses were familiar with the rule would not tend to carry the inference to the jury that the failure to observe the rule constituted, in itself, an act of negligence. The question of negligence is one thing. As to whether or not the witnesses were familiar with the rule is an entirely different question and has no bearing upon the question of negligence. Knowledge of the rule on the part of these witnesses would neither convict nor excuse appellant for the act in question.

It is also insisted that the trial court erred in permitting the re-direct examination of the witness Thixton as to a conversation with Dr. McCutcheon. We think the door was opened for this examination by the cross-examination of the witness in which fragments of the conversation had been drawn out. Appellee, by the familiar rule, was entitled to the whole conversation.

The question put to the witness Hagstrom as to whether

it was physically possible, in the night time, for the motorman on the front of the car to see anybody getting off the rear platform of a box car, called for a mere matter of opinion, and the objection to it was properly sustained.

Appellant complains that Dr. Ferguson, a witness for appellee, was permitted to state that in an examination of appellee made by him, the day he testified, he "found deformity, and abnormal mobility of the hip, an apparent inability to use it," the objection being to the last clause of the answer. The witness before this evidence was given had testified to the same thing without objection. Subsequently he testified without objection as follows: "I have seen a limb with the fracture of the neck of the femur where there was non-union, where they were able to use it fairly well, and I have seen others where they could not use it at all. How it is in this case he will have to testify to. I do not know that. I could only form my opinion on that. My examination would not reveal that." It is clear from this evidence that Dr. Ferguson was giving his opinion, in the expression which was objected to. He expressly disclaims any knowledge of the fact, and says that his examination would not reveal the fact one way or the other. He was competent to give an opinion as an expert. The court did not err in allowing the testimony to stand.

We do not think there was reversible error in allowing the son of the appellee, William J. Lowitz, to testify that appellee complained of pain in his left leg. From the context of the testimony of this witness it appears that the time referred to by the witness was somewhere from the time of the accident, to about an hour thereafter, when the witness left his father's house to go to his brother's home. It may have been near enough to the time and place of the accident to make it a part of the *res gestae*. That does not clearly appear from the record. But, conceding that the answer was an improper one, in view of the uncontradicted testimony in the case as to the character of the injury received by appellee, we do not think that it was of such prejudicial character

that a different result would have followed had it been excluded. West Chicago St. R. R. Co. v. Carr, 170 Ill., 478.

Appellant requested and the trial court refused to give to the jury the following instruction:

"The jury are instructed that the rule read in evidence by plaintiff's attorney, claimed to be a rule of the defendant relating to the conduct of conductors and motormen at railway crossings, was not admitted by the court, nor should it be considered by the jury, as furnishing a substantive ground of complaint to the plaintiff, and there can be no recovery in this case based on said rule."

In West Chicago St. Ry. Co. v. Petters, 196 Ill. 298, the court said:

"We think the appellant was not prejudiced by the refusal of the trial court to give this instruction to the jury. This class of instructions, which select one item of evidence or one fact disclosed by the evidence and state that a certain conclusion does not follow as a matter of law, from that fact, are calculated to mislead and confuse a jury. * * * If an instruction of this nature were held proper, it would be possible for a defendant to select each 'mere fact' constituting the entire chain of facts by which negligence was proved, and enable the court to instruct the jury that each of these links in the chain did not, of itself, constitute negligence, and while each particular link might not of itself constitute negligence, yet the whole, taken together, would, and thereby the court would be enabled to instruct the jury on the facts, and take away the consideration of facts from them." The instruction commented upon in the above language was to the effect that no presumption of negligence arises against the defendant from the mere fact that the plaintiff was injured in connection with the defendant's cars. We regard the comments of the court as equally applicable to the refused instruction in this case. One is as correct, in point of law, as the other. The plaintiff in that case could not have made out his case by proving that he was injured in con-

nection with defendant's cars. The plaintiff in this case could not make out his case by proving the rule of the defendant. If this instruction had been given, the jury might easily have concluded that the court meant, to tell them that there could be no recovery in the case based on the act of the motorman in starting up the car while appellee was in the act of alighting therefrom, without using proper care to ascertain that no passenger was attempting to get on or off the car. Or to speak more generally, the jury might easily mistake the language of the requested instruction to mean that there could be no recovery based on the violation of the rule of duty imposed by law upon appellant, which was sought to be enforced by the rule of appellant. We do not think there was error in refusing the instruction.

It is insisted by appellant that under the evidence disclosed by the record appellee was injured through his own act, in attempting to alight from the car, and that no remissness of duty in the premises is shown on the part of appellant. These were questions of fact for the jury, under instructions of the court. At the instance of appellant twenty-seven instructions were given to the jury covering every possible aspect of the case. The evidence in our judgment amply justifies the verdict. Its weight and preponderance were for the jury to determine, under the instructions. Appellee was within his legal rights in attempting to alight from the car after it had stopped on the south side of 40th street. West Chicago St. Ry. Co. v. Manning, 170 Ill., 417; Springfield Ry. Co. v. Hoeffner, 175 Ill., 634; North Chicago St. R. R. Co. v. Brown, 178 Ill., 187; Chicago West Division Ry. Co. v. Mills, 105 Ill., 63. We find no reason for being dissatisfied with the finding of the jury under the evidence.

Nor do we think the verdict was excessive. While appellee was at the time of his injury well advanced in age, his general condition of health and his vigor and activity were good. The broken bone has never united and never will, according to the testimony. The injuries are permanent and serious and he is practically cut off from all ability to work

and earn money.   The sum awarded is not undue compensation for the losses, injuries, pain and suffering which the evidence shows he has sustained

The judgment is affirmed.

*Affirmed.*