THE SOUTHERN KANSAS RAILWAY COMPANY v. RILLA C. PAVEY.

1. INJURIES TO PASSENGERS—*Starting Train*—*Culpable Negligence.* The plaintiff's evidence tended to show, among other things, as follows: The plaintiff and her husband were passengers on the defendant's railroad train from Chanute to Ottawa, with tickets from Chanute to Topeka. They had with them their baby and a basket and some wraps. The conductor punched their tickets and gave them checks, and told them they would have to change cars at Ottawa. Afterward, on arriving at or near Ottawa, the conductor took up their checks; and shortly afterward the brakeman called out "Ottawa;" and shortly afterward the train came to a full stop. They then gathered up their wraps and the baby and the basket, and started toward the rear end of the car to get off. Neither had ever before been in Ottawa, nor had either of them any knowledge of the place or of the station. The conductor and the brakeman saw them passing out of the car, but said nothing, nor did they make any inquiries, nor did they see any other people acting as though they were about to leave the train. They believed that they had arrived at the station, and were intending to leave the train for that reason. The husband got off first with the baby, and the plaintiff was following

him. While she was standing on the next to the last step and was in the act of stepping upon the last step, the train started suddenly with a jerk and threw her down on the ground, and she was thereby injured. She heard no signal for starting the train, and knew of none. This was on one of the public streets of Ottawa, and it was dark at the time, and about three or four o'clock in the morning. There was no station there, nor any platform upon which to alight, nor any lights. They believed that they were acting carefully in their attempt to leave the train. The train had not arrived at the station, however, but had stopped only at a railroad crossing. *Held,* That the evidence was sufficient upon which the jury might find that the defendant was guilty of culpable negligence causing the injury, and that the plaintiff was not guilty of any culpable contributory negligence.

2. ——— *Evidence—Instructions.* And further *held,* under the facts of this case, that the court below did not commit any material error in admitting evidence concerning a certain rule of the railroad com-. pany, nor in giving or refusing instructions, nor in striking out cer- tain special questions which the defendant requested the court to submit to the jury.

*Error from Franklin District Court.*

THE opinion states the material facts. Judgment for plaintiff, *Pavey,* on November 10, 1888. The *Railway Com-pany* brings the case here.

*Geo. R. Peck, A. A. Hurd, Robert Dunlap,* and *W. Little-field,* for plaintiff in error.

*A. H. Case, H. P. Welsh, Charles Curtis,* and *Joseph G. Waters,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Franklin county on October 8, 1887, by Rilla C. Pavey against the Southern Kansas Railway Company, to re-cover for personal injuries alleged to have been sustained by the plaintiff through the negligence of the railway company. The case was tried before the court and a jury, and the ver-dict and the findings of the jury, and the judgment of the court, were in favor of the plaintiff and against the defend-

ant for $6,000, as damages; and the defendant, as plaintiff in error, brings the case to this court.

The first ground urged for reversal is, that there was no negligence shown on the part of the defendant, and that the evidence showed that the plaintiff's injuries were caused by her own negligence. There was no great conflict in the evidence, but still there was some conflict, and as the verdict and findings of the jury and the judgment of the court were in favor of the plaintiff and against the defendant, we must take the evidence on the part of the plaintiff as true, and must consider all the evidence on the part of the defendant where it conflicts with the plaintiff's evidence as not true; and viewing the evidence in this light, and taking the case as made out by the plaintiff, the facts are substantially as follows: The plaintiff was a married woman, about 26 years of age when the injury occurred; had resided in Wilson county. The family consisted of herself, her husband, and a baby; but they concluded to change their place of residence to Topeka, and they were on their way from Wilson county to Topeka for that purpose when the injury occurred, which was on March 16, 1887. On the night of March 15, 1887, they purchased tickets from the defendant at Chanute for transportation from that place to Topeka, and went into one of the defendant's cars forming a part of one of its trains going from that place northwardly. Besides the baby which they carried with them, they also had some wraps, and a basket with the baby's things in it. After starting on their journey the conductor on that train punched their tickets and gave them checks, and told them that they would have to change cars at Ottawa. It was then in the night-time and dark. When the train arrived at or near Ottawa the conductor took up their checks, and shortly afterward the brakeman called out "Ottawa," and shortly afterward the train came to a full stop. At that time they were sitting about the middle of the car, and the train consisted of the engine and about seven cars, one being a sleeper. When the train stopped they gathered up their wraps and the baby and the basket, and started toward the rear end of the car to

get off. They had never before been in Ottawa, and had no knowledge of the place or of the station. The conductor was sitting across the aisle and about three seats back of where they sat, and they passed him as they went to the door; and they met the brakeman at the door as they were going out and passed him. Neither the conductor nor the brakeman said anything to them, nor did they make any inquiries of anyone, nor did they see any other people acting as though they were about to leave the train. They believed that they had arrived at the station and they were intending to leave the train for that reason. Plaintiff's husband got off the car first with the baby, and she was following him. While she was standing on next to the last step, and was in the act of stepping upon the last step, the train started suddenly with a jerk and threw her down on the ground. She had heard no signal for starting the train, and knew of none. This was in one of the public streets of Ottawa, named Walnut street. It was then about three or four o'clock in the morning and was dark. There was no station there nor any platform upon which to alight, nor any lights. They believed that they were acting carefully in their attempt to leave the train. The train, however, had not arrived at the station. It had arrived only at or near the crossing of the Missouri Pacific Railway, and it stopped for that reason. The station was still further north about two blocks, and across the Marais des Cygnes river. The plaintiff was injured by the fall; was hurt in her left hip; lost the use largely of her left lower limb, and has had to use crutches ever since; and her back is also affected. Besides the general verdict of the jury, which was simply in favor of the plaintiff and against the defendant, and assessed the plaintiff's damages at $6,000, the jury also, upon special interrogatories presented to them by the court at the request of the defendant, made the following findings:

"1. Where did the plaintiff get off the train at the time she received the injury? Ans. Near Second and Walnut streets, opposite Shaner House.

"2. Was she ordered or instructed or invited by any of

defendant's employés to get off at that place; if so, by whom? A. She was; by the brakeman and conductor.

"3. Was she induced by any act of defendant's employés to get off at that place?   A. Yes.

"4. If so, by what act or acts of defendant's employés was she induced to get off there?   A. By the conductor's instructing her to change cars at Ottawa, and the brakeman calling 'Ottawa,' and their neglecting to interfere with her when leaving the car.

"5. Did the conductor or brakeman, or either of them on that train, see her when she got off.   A. Yes.

"6. Could the plaintiff, when she got off the platform of the car, or before getting off, have seen that there was no station or platform at that place?   A. No.

"7. Was the injury complained of by the plaintiff the result of negligence on the part of the defendant, or any of its employés?   A. Yes.

"8. If so, who were the employés of the defendant that were guilty of such negligence?   A. The conductor and brakeman.

"9. What were the acts, if any, of defendant's employés that caused the plaintiff's injury?   A. Instructing her to change cars at Ottawa; calling 'Ottawa' prior to a stop, and then starting before plaintiff had time to alight from the car; by silently consenting for her to leave the car.

"10. Was the negligence of defendant's employés, if any, slight, or gross, or ordinary?   A. Gross.

"11. Could the plaintiff have avoided the injury by the exercise of ordinary care and prudence on her part?   A. No.

"12. Could she have avoided the injury by the exercise of great care?   A. No.

"13. Did she exercise that degree of caution that a prudent person would under similar circumstances?   A. Yes.

"14. Did the conductor or brakeman in charge of that train, or either of them, call 'Ottawa,' just before or at the time of stopping at the Missouri Pacific railroad crossing? A. Yes.

"15. If so, which called it?   A. The brakeman.

"16. Did the brakeman call 'railroad crossing' in the car in which the plaintiff was riding, just before or at the time the train stopped for the Missouri Pacific railroad crossing, and where plaintiff got off the train?   A. No.

"17. Did the brakeman on that train, after it left the Bur-

lington junction, call 'Ottawa the next station,' in the car in in which plaintiff was riding?    A.  No.

"18.  Did the brakeman call 'Ottawa' in each car of the train, except the sleeper, after crossing the Missouri Pacific railroad crossing?    A.  Yes.

"19.  Was the plaintiff guilty of any negligence in getting off the train at the place where she received the injury?    A. No.

"20.  Did her negligence contribute in any degree to the injury?    A.  No.

"21.  What amount of actual damages, if any, did the plaintiff sustain?    A.  Six thousand ($6,000) dollars.

"22.  What amount, by way of exemplary damages, do you find, if any, for the plaintiff?    [This question was stricken out by the court, to which defendant excepted.]

"23.  What amount of damages for pain and suffering do you find for the plaintiff?    [Stricken out by the court; defendant excepts.]

"24.  What amount of damages for mental suffering do you find for the plaintiff?    [Stricken out by the court; defendant excepts.]

"25.  How long did the train on which the plaintiff was riding stop at the railroad crossing in Ottawa?    A.  A short time.

"26.  Did the engineer give any signal before starting the train on which plaintiff was riding, after the stop at the Missouri Pacific railroad crossing in Ottawa?    If so, what signals were given?    A.  Two short whistles.

"27.  In what coach of the train was the plaintiff riding when it came into Ottawa, and in what part of the coach was she then sitting?    A.  One of the passenger coaches, and near the middle of the car.

"28.  Did the plaintiff remain in her seat in the car until the car came to a full stop at the railroad crossing in Ottawa? A.  She did."

This court cannot say as a matter of law that no culpable negligence was shown as against the defendant, or that the injury to the plaintiff was caused by her own negligence, or even that she was guilty of any culpable contributory negligence.

1. Injuries to passengers — starting train — culpable negligence.

It is next claimed that the court below erred in admitting evidence showing a certain rule of the railroad company, which

reads as follows: "Conductors must prevent passengers from
endangering themselves by imprudent exposure." It had al-
ready been shown by the evidence of one of the defendant's
witnesses, partly on his examination in chief and partly on his
cross-examination, that under the rules of the company it was
the duty of both the conductor and the brakeman to prevent
all danger to passengers; and therefore it could not have been
material error for the plaintiff to show substantially the same
thing. Besides, under the facts of this case, we do not think
that it would have been material error for the court to have
allowed this evidence to be introduced, even if no previous
evidence of the same character had been introduced by the
defendant. We can imagine cases, however, where the in-
troduction of such evidence would be erroneous, but we do
not think that the present case is one of such cases.

It is next claimed that the court below erred in giving and
refusing instructions. It is claimed that the court erred in
refusing to give one certain instruction asked for by the de-
fendant; and also in giving five different and isolated portions
of the general charge. We think, however, no material error
was committed. The general charge was full enough to cover
everything that was necessary to be given to the jury, and
seems generally to be very fair as toward both parties. If we
should copy the charge in full it would show that there is but
little foundation for any claim of error concerning instruc-
tions, either given or refused, but it is too long to be copied
in this opinion. We shall copy one portion thereof, however,
which furnishes the strongest ground for a claim of material
error of any that can be found in any other portion of the
general charge or of the instructions given, and that portion
reads as follows:

"If the brakeman upon the platform saw her descend the
steps as if to get off the train, and failed to warn her of the
danger, these are matters from which the jury are authorized
to find negligence on the part of the company, and sufficient
to authorize a recovery, unless, as before stated, she herself
was also guilty of negligence directly contributing to the in-
jury."

This instruction is erroneous in this particular: There was no evidence introduced to show that the brakeman was upon the platform while the plaintiff was descending the steps as if to get off the train, or that he saw her descending the steps, unless by very remote inference.  He did, however, under the plaintiff's evidence, see the plaintiff and her husband, with their wraps, their basket, and their baby, go out of the car as if to get off the train, which is substantially the same thing as is mentioned in the instruction of the court; and yet, notwithstanding the fact that he saw all these things, he still failed to warn her or her husband of any danger or to give them any information.  It is possible that he saw her descending the steps, but the evidence does not show it unless by possible inference.  From what he did see, however, we think it was just as much his duty to have warned the plaintiff of the danger as it would have been if he had seen her descending the steps.  The court in its general charge stated the issues correctly, and the jury had full knowledge with regard to the matters upon which they were to find.  The court instructed the jury in substance that the burden of proof rested upon the plaintiff; that in order for her to recover it was necessary for her to prove her case by a preponderance of the testimony.  And the court also instructed the jury that they were the exclusive judges of all questions of fact, of the weight of the testimony and the credibility of the witnesses; and it would therefore seem that the jury could not possibly have been misled to the prejudice of the defendant by this slight error of fact contained in the foregoing instruction of the court.  We think the error was immaterial.

2. Evidence—instructions.

It is also claimed that the court below erred in striking out the special questions numbered 23 and 24, which the defendant requested the court to submit to the jury.  In some cases a refusal to submit such questions might be erroneous, but in this case we are inclined to think it was not.  There was no evidence tending to show particularly what damages arose from pain or suffering, either physical or mental, and if the

jury found any damages for pain or suffering, they found them only as *actual* damages. The entire damages allowed in this case were only $6,000, and the jury, by their special findings, show that they allowed the same only as actual damages, and we cannot say that that amount is excessive or even apparently so; hence, while it might be error in some cases for the court to refuse to submit questions to the jury similar to the ones above mentioned, we cannot say that such refusal is erroneous in the present case. We cannot say that any material error was committed by the trial court in this case, and therefore its judgment will be affirmed.

All the Justices concurring.