## TEXAS TRACTION CO. v. HANSON.[†]

(Court of Civil Appeals of Texas. Dallas. Dec. 16, 1911. Rehearing Denied Jan. 20, 1912.)

1. NEGLIGENCE (§§ 111, 138*)—INSTRUCTIONS—APPLICABILITY TO PLEADING AND EVIDENCE.

It is not necessary that a complaint set out each detail of negligence, and an allegation that a car was wrecked as the result of negligence of defendant's employés in charge thereof being sufficient to admit evidence of any kind of negligence on the part of such employés in operating the car authorized instructions on the specific acts of negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 182–184, 354–370; Dec. Dig. §§ 111, 138.*]

2. CARRIERS (§ 321*)—INJURIES TO PASSENGERS—INSTRUCTIONS.

Where a complaint for injuries to a passenger alleged that, while the car was being carelessly operated at a high speed of about 25 miles an hour, it was derailed and wrecked, and alleged negligence in the construction and maintenance of tracks, switches, and equipment of cars and machinery, and negligence in operating the car at a high rate of speed in violation of a city ordinance prohibiting greater speed than 12 miles per hour, and there was conflicting evidence as to the rate of speed and the negligent construction of the switch, the court was authorized in charging that if defendant, in operating the car, failed to exercise care, by reason of which the car was derailed and plaintiff injured, or if, at the time of the derailment, the car was being operated at a greater rate of speed than 12 miles an hour and was derailed by that reason, plaintiff was entitled to recover.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1326–1337; Dec. Dig. § 321.*]

3. DAMAGES (§ 42*)—EXPENSE INCURRED—BOARD.

In an action for injuries to plaintiff, who was earning $65 per month and having his expenses paid, he was entitled to recover money paid for board as part of the expense sustained by reason of the accident.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 89; Dec. Dig. § 42.*]

4. DAMAGES (§ 216*)—PLEADING—MENTAL SUFFERING.

Where plaintiff alleged that his injuries would result in a permanent scar and disfigurement, which was the cause of much discomfort, humiliation, and embarrassment, that he suffered physical pain and mental anguish and had sustained permanent injuries and disfigurement which had resulted in great grief and humiliation, and that by reason of said facts he had been damaged, etc., it was not error to give an instruction on mental suffering.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 548–555; Dec. Dig. § 216.*]

5. CARRIERS (§ 317*)—INJURIES TO PASSENGERS—EVIDENCE—ADMISSIBILITY.

In an action for injuries to a passenger from derailment of a car at a switch, a witness testified that if a plug was kept in place it closed

---

the switch and held it in whichever direction it was turned, and that if it was in place and in good condition it ordinarily kept the switch in good condition and a car would go over, and was then asked if the plug were out of the switch and the car was going at a rapid rate, it would not be more liable to split the switch than if going at a slow rate, and answered affirmatively. *Held* admissible as tending to show negligence as against an objection that there was no evidence or allegation that the plug was out of the switch.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1295–1306; Dec. Dig. § 317.*]

**6. CARRIERS (§ 317*)—INJURIES TO PASSENGERS—ADMISSIBILITY OF EVIDENCE—RULES OF THE COMPANY.**

Plaintiff having alleged that a street car company was guilty of negligence in operating its car at a high and dangerous rate of speed in violation of its own rules, and having proved the rate of speed at which the car was being operated at the time of the derailment, it was competent to show what the rules of the defendant were as to operation of cars over switches of the character of that at the place of accident.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1295–1306; Dec. Dig. § 317.*]

**7. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF CUMULATIVE EVIDENCE.**

Any error in admitting evidence cumulative with evidence admitted without objection was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160; Dec. Dig. § 1050.*]

**8. CARRIERS (§ 317*)—INJURIES TO PASSENGERS—EVIDENCE—ADMISSIBILITY—RULES OF COMPANY.**

In an action by a passenger for personal injuries from derailment of a car at a switch at which it was shown a previous accident had occurred, evidence as to the company's rules as to rate of speed in going over switches was admissible to show that the company knew such an accident was liable to occur at this place and in recognition of the danger had promulgated the rule.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1295–1306; Dec. Dig. § 317.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by A. Hanson against the Texas Traction Company. From a judgment for plaintiff, defendant appeals. Affirmed.

M. B. Templeton and Head, Smith, Hare & Head, for appellant. McReynolds & Hay, for appellee.

BOOKHOUT, J. On March 22, 1910, appellee, Arthur Hanson, instituted this suit in the district court of Grayson county against appellant, Texas Traction Company, for damages for personal injuries alleged to have been received by him on January 22, 1910, while he was a passenger on one of appellant's cars. The case was tried on October 29, 1910, and resulted in a verdict and judgment in favor of appellee for $750. Appellant presented a motion for a new trial which was by the court overruled, and assigns error and brings the case to this court on appeal for review.

[1, 2] Appellant assigns as error the first paragraph of the court's charge reading as follows: "It was the duty of defendant while transporting plaintiff in its said car to exercise for plaintiff's safety the degree of care that a very cautious and prudent person would have exercised under the same circumstances; so, therefore, if you believe from the evidence that on said occasion defendant, its servants, and employés in charge of said car, in operating its said car and in transporting plaintiff failed to exercise such degree of care, and that by reason of such failure, if any, said car was derailed and plaintiff thereby injured as a proximate result of said derailment; or, if you believe from the evidence that at the time of the derailment of said car it was being operated at a greater rate of speed than 12 miles per hour; and if you further believe from the evidence that said car was caused to be derailed by reason of its being operated at said rate of speed greater than 12 miles per hour, if you should believe from the evidence that plaintiff was injured by reason of said derailment, then in either of these events you will find for plaintiff and assess his damages as hereinafter directed unless you should find for defendant under other instructions given you." The proposition presented is that when a plaintiff makes a general allegation of negligence, followed by allegations of specific acts of negligence, he is held and restricted by the term of his specific allegations. The rules of pleading do not require each detail of negligence to be set out. The allegation that the car was wrecked as a result of negligence of appellant's employés in charge of the car was sufficient to admit evidence of any kind of negligence on the part of such employés in operating the car and the charge was necessary and proper. Appellee alleged that while the car "was being carelessly and negligently operated at a high rate of speed, to wit, about 25 miles an hour on West Lamar street in the city of Sherman, said car was derailed and wrecked," etc. After alleging negligence of appellant in failing to exercise reasonable diligence in the construction and maintenance of its tracks, rails, roadbed, switches, and spurs, and in failing to construct, equip, and maintain its cars, machinery, and other equipment in a safe and suitable condition, appellee further alleged that the accident occurred by reason of the carelessness, recklessness, and negligence of the defendant's agents and employés in charge of the car, and (their negligence) in operating same at a high and dangerous rate of speed at the point in question in violation of the ordinance of the city of Sherman, which prohibited the running of cars at a greater rate of speed than 12 miles per hour within the limits of the city of Sherman.

The evidence as to the speed of the car was conflicting, some witnesses testifying 4 or 5 miles per hour and others 15 to 20 miles. The ordinance of the city of Sherman limited the speed to 12 miles per hour. There was evidence that the switch at or shortly prior to the accident was in bad condition. W. E. Gates, a witness for appellee testified that in January, 1910, he was a conductor in the employ of the Texas Traction Company, and was familiar with the spur or switch at the point in question. "It was a tongue switch * * * and turned off to the express office north. The condition was not very good to the express office; the switch was not; the point of it was not sharp. There was supposed to be a wedge in the switch between the rail and the switch, to keep it from jumping and opening the switch, and when they wanted to go to the express office they would take the wedge out. The motorman would take the wedge out with a switch bar, prying the switch open and put the wedge in going to the express office." He further testified that it was very dangerous to operate a car at a high rate of speed over a tongue switch because it is liable to split the switch; that the front truck is liable to jar the switch point over and the rear trucks take the wrong track, which is called splitting the switch; that when going at a high rate of speed it is more dangerous to split a switch than while going slowly, because the car, not being under control, will be thrown sideways and overturned, whereas, if going slowly, if it leaves the track, the car can be stopped before an accident occurs, etc. James Bowman, roadmaster for appellant, testified that he had examined the switch after the accident and found the point in good condition; that there had not been a car overturned at this point before this accident, but shortly previous a car had split the switch at said point; that the company did have a rule to reduce speed over switch points, but he did not know what the rule was as to the number of miles per hour. He did not regard it dangerous to operate a car past a switch of that kind at a rate of 15 or 20 miles an hour; that ordinarily, if the switch, car, and everything were in good condition, it would go over the switch without an accident; that those switches were plugged, and, if the plug was kept in place, it closed the switch and held it in whichever direction it was turned; and if the plug was in there and in good shape, it ordinarily kept the switch in good condition so the cars would go right over it. Other witnesses testified that it was dangerous to operate a car over a switch of this character at a high rate of speed.

The charge of the court submitting the issue of appellant's negligence in the operation of the car was correct. This issue was raised by both the pleading and the evidence. Railway Company v. O'Donnell, 58

Tex. 42; Railway Company v. Smith (Sup.) 1 S. W. 566; Ivey v. Williams, 78 Tex. 687, 15 S. W. 163; Railway Company v. Jenkins, 137 S. W. 714; Schuster v. Bauman Jewelry Company, 79 Tex. 184, 15 S. W. 259, 23 Am. St. Rep. 327; Railway Company v. Safford, 48 S. W. 1105; Railway Company v. Erwin, 65 S. W. 496.

[3] In the second assignment it is contended that there is error in the fourth paragraph of the charge reading as follows: "If under the foregoing instructions you find for the plaintiff, you will allow him such sum as you may believe from the evidence will, as a present cash payment, reasonably and fairly compensate him for the physical and mental pain, if any, you may believe from the evidence he has suffered by reason of his injuries; also for the value of the time he has lost, if any, by reason of his injuries; also for the mental suffering, if any, it is reasonably probable will be occasioned him in the future by reason of his injuries; also for the reasonable value of his board, if any, which you may believe from the evidence he might be entitled to for the time he was unable to work, if any, by reason of his injuries; also for the reasonable value of nursing him for the time you may believe from the evidence, if any, it was necessary for him to be attended by some one in that capacity." The proposition presented is that this charge in submitting as elements of damage the value of time lost, and the value of board for the time appellee was unable to work by reason of his injuries, submits a double recovery for the same thing. This proposition is not sustained. The appellee was entitled to recover the value of his time lost and also expenses necessarily incurred as the result of his injuries. His board was a necessary part of his expenses. Under the facts of this case the value of time lost did not include his board and the charge complained of did not authorize a double recovery. Plaintiff was earning $65 per month, and, in addition to this, his expenses were paid. If out of his earnings he had been compelled to pay his board, the value of his time would of course include his board, but as his expenses were paid by his employer while he was working, the cost of board while suffering from his injuries was an additional item of damage, for which he was entitled to recover as a part of the expenses occasioned by the injury.

[4] Again it is contended that the item of future mental suffering in the charge was not authorized by the pleading. Appellee after describing the injuries sustained by him, alleged, "such injuries will result in a permanent scar and disfigurement, which is the cause of much discomfort, humiliation and embarrassment to plaintiff. * * * That by reason of such injuries he has suffered physical pain and mental anguish, and has sustained permanent injuries and dis-

figurement, which has resulted in great grief and humiliation, and by reason of said facts he has been damaged in the sum of $5,000 actual damages." He testified that when the back of the car turned off on the spur it threw him out of the south door; that he was thrown about eight or ten feet head-foremost and hit on his chin. After describing his injuries, one of which was a severe cut under the chin which left a permanent scar, and the severe pain and suffering which resulted from his many wounds and bruises, he stated: "There is a scar on my side and a scar on my chin now. This one on my chin, when I get shaved, about 9 times out of 20, I get cut there by the barber dragging the razor across it. There is not anybody that is proud of scars on their face." (The scars on his face and side were exhibited to the jury.) He testified: "I am humiliated by this scar on my chin. It is a scar and people notice it." Appellee having alleged and proven that the injuries sustained were painful and had resulted in a permanent scar and disfigurement, which was the cause of much discomfort, humiliation, and embarrassment, the court properly submitted to the jury the item of future mental suffering.

[5] In the third assignment error is assigned to the admission of the testimony of the witness James Bowman. The witness, James Bowman, testified without objection that he examined this switch a short time after the accident and found the point in good condition; that as far as he could see the car was all right; that a car had split this switch a short time before the accident and had not turned over; that the company had a rule reducing and regulating the speed of cars over a switch of this kind; that he did not ordinarily think it was dangerous to operate a car past a switch of that character at a speed of 15 or 20 miles per hour, but ordinarily, if the switch, the car, and everything else was in good condition the car would go over all right at 15 miles an hour without accident; that those switches were kept plugged, and, if the plug was kept in place, it closed the switch and held it in whichever direction it was turned; that if the plug was in place and in good condition it ordinarily kept the switch in good condition and a car would go right over it. If a car was going four or five miles an' hour, it would be easier to stop it than if going 15 or 20 miles per hour. Witness was then asked, "Suppose the plug is out of the switch, and the car is going at a rapid rate of speed, would it be more liable to split the switch than if going at a slow rate of speed?" and was permitted to answer, "If the plug is out of the switch and the car is going at a rapid rate of speed, it would be more liable to split the switch than if it was going at a slow rate of speed." This evidence was objected to on the ground that there was no evidence that there was any plug out of any switch, nor was there any charge in the complaint that there was any plug out of any switch, but simply a general allegation of negligence as to the condition of the switch. The court did not err in this ruling. This evidence was admissible as tending to show negligence' in the operation of the car.

[6] In the fourth assignment, error is assigned to the admission of the testimony of the witness Gates. While plaintiff was introducing his evidence in rebuttal he offered the deposition of W. E. Gates, and offered to read from said deposition the following: "I knew whether or not the Texas Traction Company had any rules or regulations, or whether the officers of said company had promulgated any bulletin with reference to the speed of cars being operated over this switch or switches of this character. They had bulletins with reference to the speed of cars being operated over switches of this character. The bulletins were written, and this was in effect before the time of the accident. I don't know just how long this had been in effect, but fully six months before this time to my knowledge. The bulletin was printed, but I have no copy to mark for identification. I couldn't say what the number of these bulletins were, but they were all numbered. The substance of the bulletins was the speed of the cars was limited to three miles per hour over these tongue switches." This evidence was objected to on the ground that the same was irrelevant and immaterial and purported to be the rule of the company for the government of its employés and was not such rule that plaintiff had any knowledge of at the time of the accident. The court overruled the exception, and the evidence was admitted. The court did not err in this ruling. Appellee having alleged the defendant was guilty of negligence in operating the car at a high and dangerous rate of speed in violation of its own rules and having proven the rate of speed at which the car was being operated at the time of the accident, it was competent and proper to introduce evidence showing what the rules and regulations of the defendant were with reference to the operation of cars over switches of this character.

[7, 8] Again, it seems that this evidence was cumulative, and for this reason its admission was harmless. The witness James Bowman testified without objection: "My best recollection is that they have a rule about the speed over those switches, but at that time I did not know what the rule was as to the number of miles per hour. I do not know about what the rate was. There was a limit. There was a rule to reduce speed over a switch point." It is a fact that appellant had promulgated a rule limiting the speed of cars over switches of this character. This evidence was admissible as tending to show that it was negligence to

operate a car at a higher rate of speed than that stated in the rule; as appellee's proof showed that this car was being operated at the rate of 15 to 20 miles per hour, it was proper for the jury to consider appellant's rule in determining whether or not this was negligence. In view of the testimony of appellant's roadmaster, James Bowman, that a similar accident had occurred at this point a short time before this occurrence, evidence of appellant's rules was also admissible to show that appellant knew that such an accident was liable to occur at this place and in recognition of the danger had promulgated a rule regulating and limiting speed.

Finding no reversible error in the record, the judgment is affirmed.