ALFRED G. CANHAM, Adm'r *vs.* RHODE ISLAND COMPANY.

MARCH 1, 1913.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, and Vincent, JJ.

*(1)   Evidence.   Res Gestæ.*

Evidence as to what a motorman said while he was running up the track, immediately after the accident and the stopping of the car, in reference to the accident to deceased, was properly admissible as part of the *res gestæ.*

*(2)   Principal and Agent.   Res Gestæ.*

The declarations or admissions of an agent made while acting within the scope of his authority in regard to the transactions depending at the very time, may be given in evidence against the principal as part of the *res gestæ;* for where the acts of the agent will bind the principal, his representations, declarations and admissions respecting the subject-matter, will also bind him if made at the same time, and constituting a part of the transaction.

*(3)   Evidence.*

Statement of witness in reply to a question as to what was done with reference to the signalling of the approaching car, that deceased "was standing on my left, and he stepped down to the track to go across the track" was objectionable as attempting to state the intention of deceased, and as irresponsive to the question.

(4)  *Negligence.  Evidence.*

In an action for negligence against a common carrier causing death of intestate, question "Whether or not that light was of the same or of greater candle power than the lights on the cars used around the city," was objectionable as calling for technical knowledge which witness did not appear to possess, and also was indefinite as to the standard of comparison.

(5)  *Negligence.  Evidence.*

Question "whether or not the light that came from that headlight was stronger and brighter or of less brightness than the lights which are cast from headlights of the cars used on the city streets," was objectionable as the standard of comparison was too indefinite, and as the important question was as to the brightness of the headlight on the car which caused the accident, and witness had testified fully as to that fact, the question was immaterial.

(6)  *Negligence.  Evidence.*

In a personal injury action, inquiry to show at what point rounding a curve the motorman could have first seen a person in the center of the west track, was pertinent, and was not open to the objection that it had not been shown by positive testimony that deceased ever stood in the center of the west track, where it appeared that he must have crossed that track at the indicated point before he was struck by the car, and while it was approaching.

(7)  *Negligence.  Evidence.  Measurements.*

Objection to the testimony of a civil engineer that his measurements were taken in the day time, while the accident happened after dark, only goes to the weight of the testimony, and not to its admissibility.

(8)  *Negligence.  Evidence.*

In a personal injury action, testimony of a former motorman of defendant carrier, as to the headlight equipment of the cars on the line where the accident occurred and the distance which such a light sends its rays, was properly excluded, the questions being too general and not confined to the car involved, and testimony as to the particular headlight on the car having been given by an eyewitness.

(9)  *Hypothetical Questions.*

Hypothetical questions propounded to an expert witness who had been a motorman on the line where the accident occurred for two years, to show within what distance the car causing the accident could have been stopped at or just north of an indicated point just previous to the accident, was pertinent, where witness was shown to be familiar with the type of car and its equipment, and with the roadbed from actual experience and the questions embraced all the essential elements of the situation.

(10)  *Hypothetical Questions.*

A hypothetical question which simply asks the opinion of a witness, as to the proper and reasonable manner and speed of approaching a designated point, with an electric car, without inquiring as to the proper method of handling the car with reference to the rules of the company and without mentioning

any of the conditions surrounding the accident was too general and indefinite and was properly excluded.

*(11)  Negligence.  Evidence.*

In a personal injury action, question to an expert witness—who had been a motorman on the line where the accident occurred—as to the rule of the defendant carrier relating to the speed of cars approaching a certain point, he having testified that he knew of such a rule in force for five years prior to the time he left the employ of defendant, which was some two years before the accident, was admissible, subject to the condition that plaintiff . should show by other testimony that such rule if pertinent, remained in force covering the period of the accident, but as this offer was not made, the testimony was properly excluded.

*(12)  Negligence.  Evidence.  Rules.*

In a personal injury action against a common carrier, testimony of the superintendent of the division on which the accident occurred as to the rules of the company in force at the time of the injury as to the speed at which cars should approach stations, was improperly excluded, when offered by the plaintiff.

*(13)  Negligence.  Evidence.  Rules of Carrier.*

Proof of the rules of a defendant carrier, and of the violation thereof, while properly admissible, is not conclusive evidence of negligence, but is to be considered by the jury in connection with the other evidence.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of plaintiff and sustained.

PARKHURST, J.   The plaintiff, administrator on the estate of John S. Canham, deceased, sues in an action on the case for negligence for the benefit of the children of said John S. Canham, for damages arising from the death of said John S. Canham, resulting from his being struck by a car of the defendant company at Silver Hook station, in the town of Warwick, about six P. M., October 20, 1907.   The case was tried before a justice of the Superior Court and a jury, October 24–25, 1910.  The defendant put in no testimony, but at the conclusion of the plaintiff's case the justice directed a verdict for the defendant.

The record testimony in brief established the following facts and circumstances in connection with the accident, which is the basis of the suit.   About four o'clock in the afternoon of October 20, 1907, John S. Canham, a tailor,

left his home on Warwick Neck road, in the town of Warwick, R. I., with two friends and customers, John E. Fitzgerald and John F. O'Brien, both jewelers of Providence. The three men rode on the electric car to Hoxsie station and from this place they walked in the road and across fields to Silver Hook station, stopping on the way to pick chestnuts, and at one time to get two small glasses of beer and a cigar, each, and at another time to get two small glasses of beer and a cigar each. The beer is not shown to have had any intoxicating effect or any effect on the ability of any of the persons mentioned to walk steadily. By the time the men arrived at Silver Hook station it was drizzling rain. Fitzgeràld and O'Brien each had an umbrella, but Canham had none. The three waited for a car on the platform adjoining the station house at Silver Hook, which is situated on the east side of the tracks. Mr. Fitzgerald and Mr. O'Brien were bound northerly to Providence and Mr. Canham southerly to Warwick. At this point the electric line of the defendant company runs on a private right of way and there are double tracks running nearly north and south—the rails projecting above the roadbed. North bound cars run on the east track and south bound cars on the west track. The station platform on the east side of the right of way was on the night in question lighted by electricity. On the west side of the track at this point was also a small platform, but no building or overhead covering. The approach to the station from the road was on the east, and this approach was the one commonly used by the public in going to and from the station.

Soon after the three men arrived on the station platform, a south bound car passed without stopping, although the men, while remaining on the platform, signalled it to stop. The next car to approach the station was traveling southerly about ten minutes later. The two companions of Mr. Canham saw the car when it was rounding the curve about 200 yards north of the station. The three men were then standing near the edge of the platform, about opposite the station door. The approaching car was of the electric

suburban type, and carried a "very bright intense" head-light, the rays of which were shed quite vividly on the party at a distance of 100 yards away. When the car appeared on the curve mentioned, Mr. Fitzgerald and Mr. O'Brien each put down his umbrella and from then on continuously waived it at the car in an endeavor to signal the motorman to stop. While thus signalling Mr. Fitzgerald stepped on to the track and proceeded west as far as the west rail of the north bound track. Mr. O'Brien remained on the west edge of the station platform about opposite the door and a little to the south of Mr. Fitzgerald. Mr. Canham was just south of Mr. O'Brien and he stepped from the station platform down on to the track and proceeded directly across the track to the west. Mr. O'Brien last saw Mr. Canham facing west and walking in that direction across the west rail of the north bound track.

The car did not stop at the station, but went by at a rate estimated at about 20 miles an hour. There was no slackening of the speed of the car and no signalling or warning of any kind from the car as it approached or passed the station. The car did stop at a distance of about six lengths of the car south of the station. After the car stopped Mr. Fitzgerald and Mr. O'Brien saw the motorman of the car running back up the track toward the station and they with him discovered the dead body of Mr. Canham eight to ten feet west of the west rail of the south bound track and about 20 feet south of the south end of the west platform. Mr. Canham's head was crushed in on the right side.

There is an up-grade going south toward the Silver Hook station from a distance of about 200 feet north of the station on the railroad tracks. The roadbed between the two platforms at this station is about twenty-one feet wide. Each track is five feet one inch wide, and it is six feet between the inner rails of the two tracks.

The plaintiff's bill sets up nineteen separate exceptions, which fall into groups and may most conveniently be so considered.

Exceptions 1, 2 and 3.  The first three exceptions noted are based on the rulings of the trial court excluding evidence of what the motorman said to witness Fitzgerald immediately after the accident.  The testimony was that immediately after the accident and the stopping of the car, the motorman of the car ran up the track toward Mr. Fitzgerald and while yet seven or eight or nine feet from Mr. Fitzgerald and still moving toward him, and very much worked up he made a statement to Mr. Fitzgerald in reference to the accident in which the deceased, Canham figured.  The questions asked Mr. Fitzgerald and ruled out were:  "100 q.  What did he say?"  (Exception No. 1).  "107 q.  Now what did he say to you at that time?"  (Exception No. 2).  "108 q. Whether or not the statement that he made to you at that time related to the injury to Mr. Canham."  (Exception No. 3.)

We are of the opinion that the evidence sought to be introduced here was part of the *res gestæ* and therefore (1) admissible.  This court, in *Havens* v. *R. I. Suburban Ry. Co.*, 26 R. I. 48, 51, and in *Champlin* v. *Pawcatuck Valley St. Ry. Co.*, 33 R. I. 572, 578, has quoted and approved Mr. Wharton's definition of *res gestæ* which is as follows:  "*Res gestæ* are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events.  What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that thus speaks.  In such cases it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively, spoke or acted.  What they did or said is not hearsay; it is part of the transaction itself."

(2)     The admissibility of the evidence in the case at bar cannot be questioned on the ground that it was a statement made by an agent of the defendant company who had no power or authority to bind the company.  This court in regard to that question, in *Havens* v. *R. I. Suburban Ry. Co.*, 26 R. I. 48,

at p. 50, said: "That the declarations or admissions of an agent, made while acting within the scope of his authority in regard to the transactions depending at the very time, may be given in evidence against his principal, as a part of the *res gestæ*, is a well settled rule of law.   For where the acts of the agent will bind the principal, there his representations, declarations and admissions respecting the subject-matter will also bind him if made at the same time and constituting a part of the transaction."

The case of *Champlin* v. *Pawcatuck Valley St. Ry. Co.*, 33 R. I. 572, 576, *et seq.*, is decisive of the questions here involved.   That case arose from a collision between an electric car and a horse and wagon.   A statement that no one had denied that the railroad was to blame for the accident made by the motorman six or seven minutes after the collision, in reply to a statement by a bystander that "the railroad company is to blame for this," was testified to by a bystander and held proper evidence as part of the *res gestæ*. This court says (p. 578): "As a participant in the transaction, would not his statement to that effect made six or seven minutes after the accident, when the car was at a standstill by reason of the accident, and the plaintiff was just being picked up or had just been picked up, be admissible as a part of the *res gestæ*?   We think it would."

Another witness in that case testified as to a further statement in regard to the accident made by the motorman three or four minutes after the accident and still another witness repeated a third statement of the motorman in regard to the accident made just after the accident.   It was held that this testimony was all proper as part of the *res gestæ*.   This case was fully considered upon a review of the earlier cases in this state and it would be superfluous to cite similar cases from other jurisdictions in view of such recent ruling of this court.   The testimony which was ruled out was admissible.   Exceptions 1, 2 and 3 are sustained.

(3)     Exception 4.   The witness, O'Brien, answered in part to question 34 as shown on page 37 of the transcript: "And

Mr. Canham was standing on my left and he stepped down to the track to go across the track." The trial justice (page 38) ordered struck out "that part showing his intention." Plaintiff's exceptions numbered 4 is to this ruling. The question was as to what was done with reference to the signalling of the approaching car; this portion of the answer was not responsive to the question, and might have been stricken out on that ground, as well as upon the ground indicated. The matter involved in this portion of the answer is immaterial in any event, because it is amply shown by other testimony that Mr. Canham did cross the track and that he intended to take the south bound car to go to his house. This exception is overruled.

(4) Exceptions 5 and 6 are based respectively upon the exclusion of question 137 on page 45 and question 138 on page 46 of the transcript of testimony. By these questions Mr. Fitzgerald was asked to compare as to strength and brightness the headlight on the car which figured in the accident with the headlights on the cars used in the city streets: "137 Q. Now, whether or not that light was of the same or of greater candle power than the lights on the cars used around the city?" This question, by the use of the words "candle power," called for technical knowledge which the witness did not appear to possess; furthermore, it was indefinite as to the standard of comparison in the use of the words "the lights on cars used around the city?" "138 Q. Whether or not the light that came from that headlight was stronger and brighter or of less brightness than the lights which are cast from headlights of the cars used on the city streets?"

(5) The standard of comparison suggested was too indefinite. Furthermore, the important question was as to the brightness of the headlight on the car which figured in the accident; and that was fully shown by the same witness in later questions when he testified that "It was a very bright intense light;" that he observed the headlight as the car was approaching and the distance to which the light was thrown and that "the rays of that light were shed on us quite vividly at a

hundred yards." We think that the witness was permitted to testify fully as to the facts; and that the evidence sought by the excluded questions by way of comparison with other lights was properly excluded and was immaterial. Exceptions 5 and 6 are overruled.

Exception 7 was taken to the exclusion of the answer to question 35 on page 54 put to Mr. McSoley, a civil engineer, who made certain measurements in the vicinity of the scene of the accident. The question asked was how far north from a person standing in the center of the west track and opposite the center of the Silver Hook station, the witness could observe such person, he also standing in the center of the west track. It was in testimony that the railroad tracks curved at a point north of the station and the purpose of this inquiry was to show at what point rounding that curve the motorman on a south bound car could first see a person crossing the west track. The objection was that it was not shown by positive testimony that Canham ever stood in the center of the west track. But it does appear that he (Canham) must have crossed the west track at about this point before he was struck by the car, and while the car was approaching; the curve in the track ran northwesterly and consequently the distance toward the north from which Canham could be observed, if passing across the center of the west track, might be less than the distance at which he could be seen in the west rail of the east track where he was shown by positive testimony to have been. The question was pertinent and should have been admitted. It was in the same line of inquiry as other questions which had been admitted without objection. The general objection that the measurements were taken in the daytime, while the accident happened after dark, only goes to the weight of the testimony and not to its admissibility. Exception 7 is sustained.

Exceptions 8 and 9 were taken to the exclusion of testimony by a former motorman of the defendant company, as to the headlight equipment of the cars on the Buttonwoods line (exception 8, q. 24, p. 64), and the distance which

such a light sends its rays (exception 9, q. 25, p. 65). The questions were general and not confined to the car involved; and testimony as to the particular headlight on the car involved had already been given by an eyewitness. The testimony here in question was rightly excluded as being immaterial. Exceptions 8 and 9 are overruled.

Exceptions 10, 15, 16 and 17 relate to the exclusion of the answers respectively to question 26 on page 66, questions 38 and 39 on page 83, and question 40 on page 84 of the transcript of testimony. These were hypothetical questions put by the plaintiff's counsel to the expert witness, Saunders, who had been a motorman on this line for two years, to show within what distance the car which figured in this accident could have been stopped at or just north of Silver Hook station just previous to the accident. The witness was shown to be familiar with the type of car and its equipment and also with the roadbed at this point from actual experience in running this type of car on that line and the questions embraced (with the exception of 38 q. Ex. 15) all the essential elements of the situation as they appeared in evidence. The inquiry was pertinent. It had been shown that the car was signalled to stop by three men at a point at which the public were invited to cross the track to take the cars; that it was necessary for either of these men to cross the track before being in a position to board the car and that one of the three men started across the track for that purpose. Here were circumstances constituting notice to the motorman that a man crossing the track was relying on the stopping of the car. In this situation it was the duty of the motorman to use every effort to stop his car and thereby avoid a fatality; and it is the plaintiff's right to show that, if such a situation became evident or should have become evident to the motorman, he could have stopped his car quickly enough to have avoided the fatality. Question 38, which is the subject of exception 15 was too indefinite, in that it did not state all the conditions, and was properly excluded and exception 15 is overruled. The other questions involved in exceptions 10,

16 and 17 were properly asked, as based upon the conditions. and should have been allowed, and exceptions 10, 16 and 17 are sustained.

(10)    Exceptions 11 and 18 relate to the exclusion of the opinion of expert witness, Saunders, as to the proper and reasonable manner and speed of approaching the Silver Hook station with a suburban car bound south.   These questions simply asked the opinion of the witness; and while it is evident from the context that it was in the mind of counsel to examine this witness as to what was the proper method of handling a. car at that station with reference to the rules of the company, yet the questions under consideration do not mention the rules nor any of the conditions surrounding the accident; they are too general and indefinite in form and were rightly excluded; exceptions 11 and 18 are therefore overruled.

Exceptions 12, 13 and 14 were taken to the exclusion of testimony as to whether the defendant company previous to and at the time of this accident had a rule with reference to how a motorman should handle his car when approaching Silver Hook station and other stations on the Buttonwoods. line, and if so, what the rule was.

(11)    Exception 12 was to the exclusion of a question asked of the witness, Saunders, as to what was the rule of the defendant company relating to the speed of cars approaching the Silver Hook station, he having testified that he knew of such a rule in force for five years prior to 1905, at which time he left the employ of the defendant.   If the plaintiff was unable to show that the rule in question continued in force down to the time of the accident in 1907, it might be said that it was immaterial what the rule was in 1905 and for five years prior thereto; but as it appears from the record that the plaintiff offered to show by a superintendent in the employ of the defendant company what rules of the defendant in regard to this subject were in force in 1907 at the time of the accident, it would have been pertinent to show what those rules were for five years prior to 1905.   We think the testimony of Saunders on that point might have been admitted, subject to

the condition that the plaintiff should show by other testimony that such rule, if pertinent to this inquiry, remained in force in 1907 covering the period of the accident. Plaintiff's counsel, however, did not make any such offer; and therefore the testimony of Saunders on this point was rightly excluded and exception 12 is overruled.

(12)    Exceptions 13 and 14 relate to exclusion of testimony sought to be obtained from Mr. Searle (pp. 80–82 of the transcript) as to the rules of the defendant company in force in 1907, at the time of the accident. Mr. Searle was superintendent of the Elmwood division and knew about the rules in force in regard to the speed at which cars should approach stations on the Buttonwoods line (which included the Silver Hook station); but he was not allowed to tell what the rules were. This was clearly error. It sufficiently appears from the transcript for what purpose these rules were offered and this court is of opinion that the evidence was clearly admissible and pertinent. The case of *Desautelle* v. *Nasonville Woolen Co.*, 28 R. I. 261, was an action for negligence in operating a mill at night without providing a person to supervise the water power. "The evidence showed that always during the day-time, while the mill was running, some officer or employee of the defendant made frequent inspection of the regulator and water supply, and that on the night when the accident occurred, which was the first night that the mill had been operated, no such officer or employee was present. In determining whether such a person ought to have been supplied in the night-time it was proper for the jury to consider that such service was treated by the defendant as necessary when the mill was run by day." The jury had been charged that such omission was not negligence, but that they might take it into consideration in determining the question of negligence; and the charge was approved. This is clearly analogous to the principle of the case at bar and of the other cases hereinafter cited.

The question of the admission in evidence of rules of the defendant carrier governing the operation of its trains or cars

and issued to its employees, when such rules have been offered by the plaintiff, has been passed upon in many jurisdictions and almost without exception the courts have held such to be proper evidence, although not conclusive evidence of negligence. Some judges have said that these rules of the defendant company are part of the transaction, *res gestæ*, and some have likened them to municipal ordinances regulating the operation of trains or street cars. The prevailing ground, however, upon which such evidence is admitted is that these rules to employees indicate the necessity of care under the particular circumstances covered by the rules and are in the nature of an admission by the railroad that due care under the circumstances required the course of conduct prescribed by the rule.

*Stevens* v. *Boston Elevated Ry.*, 184 Mass. 476 (1904) involves a collision between a carriage and a car on which it was alleged the motorman did not sound his gong. After verdict for the plaintiff the only exception on review was to the admission in evidence of the rules of the company issued to conductors and motormen requiring that a gong be sounded when passing or about to pass a vehicle. The Supreme Judicial Court approved the ruling below and upon this point said (page 478): "The decisions in different jurisdictions are not entirely harmonious upon the question now raised, but we are of opinion that the weight of authority and of reason tends to support the ruling of the judge in the present case." . . . "A violation of rules previously adopted by a defendant in reference to the safety of third persons has generally been admitted in evidence as tending to show negligence of the defendant's disobedient servant for which the defendant is liable. The admissibility of such evidence has often been assumed by this court without discussion."

After stating the analogy between such rules, and ordinances or statutes regulating the running of cars, violations of which by defendant or its servants are always received as evidence, although not conclusive, of defendant's negligence,

the opinion proceeds (p. 479): "So a rule made by a corporation for the guidance of its servants in matters affecting the safety of others is made in the performance of a duty, by a party that is called upon to consider methods, and determine how its business shall be conducted. Such a rule, made known to its servants, creates a duty of obedience as between the master and the servant, and disobedience of it by the servant is negligence as between the two. If such disobedience injuriously affects a third person, it is not to be assumed in favor of the master that the negligence was immaterial to the injured person, and that his rights were not affected by it. Rather ought it to be held an implication that there was a breach of duty towards him, as well as towards the master who prescribed the conduct that he thought necessary or desirable for protection in such cases. Against the proprietor of a business, the methods which he adopts for the protection of others are some evidence of what he thinks necessary or proper to insure their safety."

The only case to the contrary cited in the opinion last above quoted, and the only case to the contrary which has come to the attention of this court is that of *Fonda* v. *St. Paul City Ry.*, 71 Minn. 438, at p. 449; and an examination of this latter case shows that no authorities are cited upon this point in support of its decision. The case is criticised in *Cincinnati St. Ry.* v. *Altemeier*, 60 Ohio St. 10, 18; and no case is cited to this court in which it had been followed. The doctrine of the case of *Stevens* v. *Boston Elevated Ry. Co.*, *supra*, has been followed in numerous cases in other jurisdictions; see *Boldt* v. *San Antonio Traction Co.*, 148 S. W. 831; *Partelow* v. *Newton & Boston St. Ry. Co.*, 196 Mass. 24; *Burns* v. *Worcester Consolidated St. Ry.*, 193 Mass. 63; *Crowley* v. *Boston Elevated Ry. Co.*, 204 Mass. 241; *Larson* v. *Boston Elevated Ry. Co.*, 98 N. E. 1048 (1912); *Georgia R. R.* v. *Williams*, 74 Ga. 723; *Atlanta Consolidated St. Ry. Co.* v. *Bates*, 103 Ga. 333; *Lake Shore & M. S. Ry. Co.* v. *Ward*, 35 Ill. App. 423, affirmed in 135 Ill. 511; *Chicago City Ry. Co.* v. *Lowitz*, 119 Ill. App. 360, affirmed in 218 Ill. 24;

*Coates* v. *Ry. Co.,* 62 Iowa, 486; *So. Kan. Ry. Co.* v. *Pavey,*
48 Kan. 452; *B. & O. R. R. Co.* v. *State,* 81 Md. 371; *Texas
Traction Co.* v. *Hanson,* 143 S. W. 214 (1912); *Frizzell* v.
*Omaha St. Ry. Co.,* 124 Fed. 176 (181); *Chicago, Milwaukee &
St. Paul Ry.* v. *Lowell,* 151 U. S. 209 (217–218); *Warner* v.
*B. & O. R. R.,* 168 U. S. 339 (345).

It should be said that in the many cases where proof of the
rules of the defendant and of the violation thereof has been
held to be properly admissible as evidence of defendant's
negligence, it is uniformly held that such evidence is not
conclusive evidence of negligence, but only to be considered
by the jury as evidence in connection with the other evidence
in the case.   And such evidence has been generally held
admissible in cases of injury to third persons as well as to
passengers.

The evidence offered and rejected as to the rules of the
defendant, which is the subject of exceptions 13 and 14, was
admissible and should have been admitted, and those ex-
ceptions are sustained.

Exception 19 was taken to the direction of a verdict for
the defendant at the close of the plaintiff's testimony.
This raises the question of the sufficiency of the evidence
produced, the chief features of which have already been
stated above.

A considerable portion of the plaintiff's brief has been
devoted, in the consideration of this exception, to a discus-
sion of the proof as to due care of the plaintiff's intestate, in
the endeavor to show that the deceased was not, as a matter
of law, upon the evidence as it stands, guilty of contributory
negligence; and that the defendant was guilty of negligence
causing death of Mr. Canham.   Inasmuch as certain evi-
dence, which may have a very important bearing upon these
questions, as well as upon the application of the doctrine
of the last clear chance, was erroneously excluded by the
trial court and it becomes necessary to grant a new trial, it
would be futile to discuss these questions at length, until
this court shall have before it all of the evidence which the

parties may see fit to introduce upon such new trial. It is sufficient to say that, in our opinion, the record as it stands does not conclusively show, as a matter of law, that the deceased was guilty of contributory negligence which was the proximate cause of his death, as was decided by the trial judge upon the motion to direct a verdict for the defendant; nor does it show conclusively that the defendant was not guilty of negligence causing his death; nor does it show conclusively that the doctrine of the last clear chance could have had no application. Sufficient testimony as to the facts of the case does appear in our opinion to require the defendant to put in its defence to the case; and we are of the opinion that the trial judge erred in directing the verdict for the defendant. Exception 19 is therefore sustained.

Exceptions 1, 2, 3, 7, 10, 13, 14, 16, 17, 19, are sustained; exceptions 4, 5, 6, 8, 9, 11, 12, 15, 18, are overruled, and the case is remitted to the Superior Court for a new trial.

*Comstock & Canning, Henry C. Hart*, for plaintiff.

*Joseph C. Sweeney, Alonzo R. Williams*, for defendant.